658 So.2d 55 (1995)
STATE FARM Mutual Automobile Insurance Company, Petitioner,
v.
Veronica Ann Laforet, et vir, Respondents.
No. 83537.
Supreme Court of Florida.
April 20, 1995.
Rehearing Denied July 24, 1995.
*56 Betsy Ellwanger Gallagher, Law Offices of Kubicki Draper, Miami, for petitioner.
George H. Moss, Moss, Henderson, Van Gaasbeck, Blanton & Koval, P.A., Vero Beach, Jane Kreusler-Walsh, Jane Kreusler-Walsh, P.A., West Palm Beach, for respondents.
George A. Vaka, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, amicus curiae for Florida Defense Lawyers Ass'n, Nationwide Ins. Companies and Nat. Ass'n of Independent Insurers.
Louis K. Rosenbloum, Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, amicus curiae for Academy of Florida Trial Lawyers.
James K. Clark, Clark, Sparkman, Robb & Nelson, Miami, amicus curiae for Government Employees Ins. Co.
OVERTON, Justice.
We have for review State Farm Mutual Automobile Insurance Co. v. LaForet, 632 So.2d 608, 609 (Fla. 4th DCA 1993), in which the district court certified the following question as one of great public importance:
WHETHER AMENDED SECTION 627.727(10), FLORIDA STATUTES (SUPP. 1992), IS A REMEDIAL STATUTE AND HAS RETROACTIVE APPLICATION.
We have jurisdiction under article V, section 3(b)(4), of the Florida Constitution. Because section 627.727(10) is not an "amended" statute but is a newly created subsection that alters section 624.155, a previously enacted statute, we reword the question as follows:
WHETHER NEWLY CREATED SECTION 627.727(10), FLORIDA STATUTES (SUPP. 1992), WHICH ALTERS THE DAMAGES AVAILABLE IN A BAD FAITH ACTION BROUGHT UNDER SECTION 624.155, IS A REMEDIAL STATUTE THAT HAS RETROACTIVE APPLICATION.
This question concerns the validity of retroactively applying a penalty to insurance companies for bad faith conduct in failing to settle uninsured motorist claims. It involves a review of three separate legislative acts: (1) a 1982 statute (section 624.155); (2) a 1990 amendment to the 1982 statute; and (3) a 1992 statute (section 627.727(10)), which alters the damages recoverable under the 1982 statute. Section 627.727(10) provides that the damages recoverable from an uninsured motorist insurance carrier in a bad faith action brought under section 624.155 and the 1990 amendment thereto shall include the total amount of a claimant's damages, *57 including any amount in excess of the claimant's policy limits awarded by a judge or jury in the underlying claim. The chapter law under which section 627.727(10) was enacted provides that it is to apply retroactively to 1982. Ch. 92-318, § 80, Laws of Fla. For the reasons expressed, we find that section 627.727(10) must be applied prospectively rather than retroactively. Consequently, we answer the question in the negative and quash the decision of the district court.
The facts of this case are as follows. In 1986, Veronica Laforet was traveling as a passenger in a car driven by her husband when they were struck from the rear by another motorist (the tortfeasor). After the accident, Mrs. Laforet incurred more than $40,000 in medical expenses for the treatment of her injuries. The Laforets were insured through State Farm, which paid Mrs. Laforet's medical bills up to the policy limits of her personal injury protection and medical payments coverage ($20,000). In 1988, the Laforets sued the tortfeasor to recover the additional cost of Mrs. Laforet's medical treatment and other damages. The tortfeasor's insurer, Travelers Insurance Company, then tendered its policy limits of $10,000. Thereafter, the Laforets unsuccessfully sought to recover out of court the remainder of their damages from State Farm, with whom they carried uninsured motorist coverage in the amount of $200,000.
In 1989, the Laforets filed suit against State Farm. Subsequently, State Farm made an offer to settle the case in the amount of $40,000. The Laforets refused the offer and the case proceeded to trial, at which a jury awarded the Laforets $400,000 in damages. The trial court reduced this verdict to $200,000 based on the available limits of uninsured motorist insurance afforded to the Laforets by State Farm. Although State Farm did eventually pay the $200,000 policy limits to the Laforets, it did so only after "dup[ing] appellees into signing a [satisfaction of judgment] altogether different from that reasonably anticipated to have been sent." State Farm Mut. Auto. Ins. Co. v. LaForet, 586 So.2d 479, 480 (Fla. 4th DCA 1991) (LaForet I). The satisfaction precluded the Laforets from proceeding with a bad faith cause of action. The trial court, however, granted relief to the Laforets under Florida Rule of Civil Procedure 1.540 by vacating the satisfaction, and the district court affirmed. See LaForet I.
In 1990, the Laforets initiated this bad faith action under section 624.155, asserting that State Farm had acted in bad faith in failing to settle the uninsured motorist insurance claim. During the course of the proceeding, two separate appeals were initiated and completed before trial. See Laforet v. State Farm Mut. Auto. Ins. Co., 578 So.2d 910 (Fla. 4th DCA 1991) (Laforet II) (reversing dismissal of suit); State Farm Mut. Auto. Ins. Co. v. LaForet, 591 So.2d 1143 (Fla. 4th DCA 1992) (LaForet III) (quashing discovery order). Eventually, however, the case proceeded to trial. At the trial, the jury returned a verdict in favor of the Laforets in the amount of $24,000. Punitive damages, which are permitted under section 624.155(4), were not awarded. On that same date (July 7, 1992), section 627.727(10) became law. That statute provides that the damages recoverable from an uninsured motorist carrier in a bad faith action filed under section 624.155, such as the one at issue here, are to include the total amount of the claimant's damages, including any amount awarded in the underlying claim in excess of the claimant's policy limits. In the chapter law under which section 626.727(10) was enacted, the Legislature directed that the statute applied retrospectively to 1982, the effective date of section 624.155. Ch. 92-318, § 80, Laws of Fla. Thus, under the retroactive application of the new statute, State Farm was liable for the entire excess judgment awarded to the Laforets in their original case against State Farm. Based on section 627.727(10), the Laforets filed a motion for additur, asking the trial judge to award them the entire amount of the excess judgment as a matter of law. The judge granted the motion and awarded the Laforets a total of $416,280, which included the excess judgment amount of $200,000, plus $65,753 in interest; $141,753 in attorney's fees; and $8,774 in costs.
On appeal, the Fourth District Court of Appeal affirmed in part and reversed in part. First, the district court reduced the judgment by $15,000 because that amount represented *58 appellate attorney's fees in several of the previous appeals in which attorney's fees had not been requested. Second, the district court rejected State Farm's contention that the trial judge did not apply the appropriate standard for determining bad faith. Finally, the district court held that the trial judge properly granted the motion for additur, finding that section 627.727(10) is to have retroactive application. In so holding, the district court certified the question regarding whether section 627.727(10) was, in fact, to be applied retroactively to 1982.
In this appeal, State Farm raises four issues, contending that: (1) section 627.727(10) cannot be retroactively applied; (2) the trial court incorrectly denied State Farm's motion for directed verdict because the basis on which State Farm denied coverage was "fairly debatable"; (3) the trial judge improperly instructed the jury regarding State Farm's duty to investigate; and (4) the judgment for attorney's fees and costs should be reversed. To properly evaluate the certified question and the other issues before us, we find it appropriate to first review the law as it relates to bad faith insurance claims in general.
Until this century, actions for breaches of insurance contracts were treated the same as any other breach of contract action and damages were generally limited to those contemplated by the parties at the time they entered into the contract. Roger C. Henderson, The Tort of Bad Faith in First-Party Insurance Transactions: Refining the Standard of Culpability and Reformulating the Remedies by Statute, 26 U.Mich.J.L.Ref. 1 (Fall 1992). Eventually, however, insurance contracts began to be seen as distinguishable from other types of contracts because they came to "occupy a unique institutional role" in modern society and affected a large number of people whose rates were dependent upon the acts of not only themselves but also of other insureds. Id. at 8. This became especially true when liability policies began to replace traditional indemnity policies as the standard insurance policy form. Under indemnity policies, the insured defended the claim and the insurance company simply paid a claim against the insured after the claim was concluded. Under liability policies, however, insurance companies took on the obligation of defending the insured, which, in turn, made insureds dependent on the acts of the insurers; insurers had the power to settle and foreclose an insured's exposure or to refuse to settle and leave the insured exposed to liability in excess of policy limits. Id. at 19-22. This placed insurers in a fiduciary relationship with their insureds similar to that which exists between an attorney and client. Baxter v. Royal Indem. Co., 285 So.2d 652 (Fla. 1st DCA 1973), cert. discharged, 317 So.2d 725 (Fla. 1975). Consequently, courts began to recognize that insurers "owed a duty to their insureds to refrain from acting solely on the basis of their own interests in settlement." Henderson, supra, 26 U.Mich. J.L.Ref. at 21. This duty became known as the "exercise of good faith" or the "avoidance of bad faith." Id. at 22. Under this new standard of culpability, if an insurer was found to have acted in bad faith, the insurer would have to pay the entire judgment entered against the insured in favor of the injured third party, including any amount in excess of the insured's policy limits. This type of claim became known as a third-party bad faith action. Id.
In Florida, third-party bad faith actions were recognized as early as 1938. See Auto Mut. Indem. Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938). Moreover, even though the tort of bad faith occurred between an insurer and its insured, Florida courts allowed the injured third party to bring a bad faith action directly against the first party's insurer. Thompson v. Commercial Union Ins. Co., 250 So.2d 259 (Fla. 1971). This was permitted because the injured third-party, as the beneficiary to the bad faith claim, was the real party in interest in a position similar to that of a "judgment creditor." Id. at 264.
By the time the legislature enacted section 624.155 in 1982, it was clearly established in Florida law that third-party bad faith actions existed at common law. Thompson; Opperman v. Nationwide Mutual Fire Ins. Co., 515 So.2d 263 (Fla. 5th DCA 1987), review denied, 523 So.2d 578 (Fla. 1988). There was, however, no first-party action by an insured *59 for bad faith in Florida at common law. Baxter. Unlike third-party bad faith actions, in first-party bad faith actions the insured, particularly in uninsured motorist claims, is also the injured party who is to receive the benefits under the policy. McLeod v. Continental Ins. Co., 591 So.2d 621 (Fla. 1992). Essentially, Florida courts had refused to recognize the tort of first-party bad faith because the type of fiduciary duty that exists in third-party actions is not present in first-party actions and the insurer is not exposing the insured to excess liability. As the court explained in Baxter, the relationship in a first-party bad faith action is the very antithesis of that established in third-party actions.
It is singularly important to ... note that regardless of the bad faith of the insurer in refusing to settle a claim against it by its insured under this provision of the policy, such action of the insurer can never result in a judgment against the uninsured motorist for any excess liability.... Because the interests of the insurer are wholly adverse to those of its insured as to every facet of a claim under the uninsured motorist provision of the policy, no basis for a fiduciary relationship between the parties exists.
285 So.2d at 656.
In 1982, the Legislature enacted section 624.155, which provided in pertinent part as follows:
(1) Any person damaged ...
....
(b) By the commission of any of the following by an insurer:
1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests;
....
may bring a civil action against such insurer... .
....
(3) Upon adverse adjudication at trial or upon appeal, the insurer shall be liable for damages, together with court costs and reasonable attorney's fees incurred by the plaintiff.
(4) No punitive damages shall be awarded under this section unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice and these acts are:
(a) Willful, wanton, and malicious; [or]
(b) In reckless disregard for the rights of any insured.
§ 624.155, Fla. Stat. (Supp. 1982). Through this statute, the Legislature created a first-party bad faith cause of action by an insured against the insured's uninsured or underinsured motorist carrier, thus extending the duty of an insurer to act in good faith to those types of actions. McLeod; Opperman v. Nationwide Mut. Fire Ins. Co., 515 So.2d 263 (Fla. 5th DCA 1987), review denied, 523 So.2d 578 (Fla. 1988). The statute provided for recovery of (1) damages proximately caused by the insurer's bad faith, together with court costs and reasonable attorney's fees, and (2) punitive damages when appropriate. McLeod. This statute, with minor modifications, was the statute in effect at the time the Laforets' policy with State Farm was issued (1986) and the asserted bad faith on State Farm's part occurred (1988-89).
In 1990, the Legislature amended section 624.155, adding the following pertinent subsection:
(7) The civil remedy specified in this section does not preempt any other remedy or cause of action provided for pursuant to any other statute or pursuant to the common law of this state. Any person may obtain a judgment under either the common law remedy of bad faith or this statutory remedy, but shall not be entitled to a judgment under both remedies. This section shall not be construed to create a common law cause of action. The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the insurer and may include an award or judgment in an amount that exceeds the policy limits.

§ 624.155, Fla. Stat. (Supp. 1990) (emphasis added). Chapter 90-119, the law under *60 which section 624.155 was amended, also provided as follows:
Except as otherwise expressly provided in this act, this act shall take effect October 1, 1990, and shall apply to policies or contracts issued or renewed on or after that date.

Ch. 90-119, § 55, Laws of Fla. (emphasis added).
In McLeod we reviewed the types of damages available under the 1982 version of the statute as well as the 1990 amendment, noting that section 624.155 did not distinguish between first- and third-party actions. We determined, however, that given the differences between first-party and third-party bad faith actions, the type of damages available in a first-party action were different from those in a third-party action. Specifically, we stated:
In a third-party action, damages ... would include the amount of a judgment in excess of policy limits because the insured is exposed to additional liability for the excess amount. Such is not the case in a first-party action, because the insured is not injured by the excess judgment amount. To allow recovery of the excess judgment in first-party cases would be in direct conflict with the fundamental principle that one is not liable for damages that he or she did not cause.
Even though the insurer's bad faith in refusing to settle a first-party action leads to an excess judgment in favor of the insured and against the third-party, causing the excess judgment to occur is not enough. To be liable under the statute, [the insurer] must not only cause the excess judgment, but the excess judgment must also injure the insured.... [I]n the uninsured motorist case, the excess judgment does not qualify as damages resulting from a violation of the statute.

591 So.2d at 624 (citations omitted) (emphasis added). We concluded that the damages allowed in a first-party action under the statute included only those damages that were the natural, proximate, probable, or direct consequence of the insurer's bad faith. We noted that such a determination was consistent with both the legislative history of section 624.155 and the 1990 amendment thereto. Additionally, we concluded that, to hold otherwise would amount to "arbitrarily setting the damages recoverable as the amount of the excess judgment"; would be "analogous to imposing a penalty or punitive damages upon the insurer"; and would be "inconsistent with the legislature's action in setting forth the specific requirements for an award of punitive damages under subsection 624.155(4)." Id. at 625 (emphasis added).
After our decision in McLeod, the Legislature enacted section 627.727(10), Florida Statutes (Supp. 1992), the statute at issue here. That statute provides:
The damages recoverable from an uninsured motorist carrier in an action brought under s. 624.155 shall include the total amount of the claimant's damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state. The total amount of the claimant's damages are recoverable whether caused by an insurer or by a third-party tortfeasor.

(Emphasis added.) The implementing language of that section provides:
The purpose of subsection (10) of section 627.727, Florida Statutes, relating to damages, is to reaffirm existing legislative intent, and as such is remedial rather than substantive. This section and section 627.727(10), Florida Statutes shall take effect upon this act becoming a law and, as it serves only to reaffirm the original legislative intent, section 627.727(10), Florida Statutes, shall apply to all causes of action accruing after the effective date of section 624.155, Florida Statutes.

Ch. 92-318, § 80, Laws of Fla. (emphasis added). As indicated by the express language of the statute, the Legislature has now determined that damages in first-party bad faith actions are to include the total amount of a claimant's damages, including any amount in excess of the claimant's policy limits without regard to whether the damages were caused by the insurance company. The Legislature has also directed that section *61 627.727(10) is remedial and is to apply to all causes of action accruing after the effective date of section 624.155. Because section 624.155 was originally enacted in 1982, the implementing language indicates that section 627.727(10) is to be applied retroactively to 1982.
We have expressly stated that the Legislature was within its authority to alter the damages allowable under the statute. McLeod, 591 So.2d at 625 ("We recognize that the legislature has the right to modify the common law definition of damages and allow recovery for amounts not proximately caused by the insurer's bad faith.").[1] The question, then, as recognized by the district court and as posed by State Farm, is whether the Legislature can modify the definition of damages retroactively to 1982 through a purported clarification of its intent.
The general rule is that a substantive statute will not operate retrospectively absent clear legislative intent to the contrary, but that a procedural or remedial statute is to operate retrospectively. Arrow Air, Inc. v. Walsh, 645 So.2d 422 (Fla. 1994); Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352 (Fla. 1994); City of Lakeland v. Catinella, 129 So.2d 133 (Fla. 1961). Even when the Legislature does expressly state that a statute is to have retroactive application, this Court has refused to apply a statute retroactively if the statute impairs vested rights, creates new obligations, or imposes new penalties. Alamo; State v. Lavazzoli, 434 So.2d 321 (Fla. 1983); Seaboard Sys. R.R. v. Clemente, 467 So.2d 348 (Fla. 3d DCA 1985).
When we apply these standards to the instant case, we find that section 627.727(10) cannot be applied retroactively because it is, in substance, a penalty. Without question, the Legislature has expressly stated that section 627.727(10) is remedial and is to be applied retroactively. Ch. 92-318, § 80, Laws of Fla. Just because the Legislature labels something as being remedial, however, does not make it so. See, e.g., State v. Smith, 547 So.2d 613 (Fla. 1989); State, Dep't of Transp. v. Knowles, 402 So.2d 1155 (Fla. 1981). In fact, in McLeod, we signified a contrary conclusion by finding that the imposition of the amount of the excess judgment as damages would be "analogous to imposing a penalty or punitive damages on the insurer." 591 So.2d at 625. For example, although the Legislature has characterized section 627.727(10) as simply a remedial clarification of legislative intent, the damages incurred by State Farm under section 627.727(10) would be over $200,000 higher in this case than if the section did not apply to this action. Further, in addition to imposing a significant penalty on all insurers found guilty of bad faith, section 627.727(10) is an entirely new provision; it would apply to all actions brought under section 624.155 since its effective date in 1982 if it were to be applied retroactively; and it significantly alters the language used to determine damages. By implementing section 627.727(10), the Legislature is in essence subjecting insurance companies in first-party bad faith actions to two penalties because, not only are they subject to punitive damages for the willful or reckless refusal to pay a claim, they are also subject to a penalty for the wrongful failure to pay a claim. This means that an insurance company found to have acted in bad faith in a first-party action may now be liable for: (1) damages proximately caused by the bad faith including interest, attorney's fees, and costs; (2) a penalty consisting of the entire amount of the excess judgment without regard to proximate causation; and (3) the additional penalty of punitive damages when the bad faith is found to be willful or reckless. To say that, under these circumstances, section 627.727(10) is simply a remedial clarification that does not retroactively impose a new penalty is not a justifiable interpretation.
The Laforets argue that the greater damages imposed under section 627.727(10) are simply an increased sanction rather than a penalty. We reject this argument based on our specific finding to the contrary in *62 McLeod and the above analysis. The Laforets, citing Lowry v. Parole and Probation Commission, 473 So.2d 1248 (Fla. 1985), and other cases, also argue that the Legislature was perfectly within its rights to clarify its intent and to apply the statute retroactively. We did state in Lowry that a clarifying amendment to a statute that is enacted soon after controversies as to the interpretation of a statute arise may be considered as a legislative interpretation of the original law and not as a substantive change. It would be absurd, however, to consider legislation enacted more than ten years after the original act as a clarification of original intent; the membership of the 1992 legislature substantially differed from that of the 1982 legislature. Compare Kaisner v. Kolb, 543 So.2d 732 (Fla. 1989) (subsequent legislatures, in the guise of "clarification" cannot nullify retroactively what a prior legislature clearly intended). Additionally, although the pre-1990 version of section 624.155 applies to this case, section 627.727(10) is equally inapplicable to the 1990 amended version of section 624.155 given that such an application would still constitute a retroactive penalty. Consequently, section 627.727(10) can apply only to actions accruing after the date of its enactment in 1992.
In summary, we conclude that section 627.727(10) applies prospectively only. In reaching this conclusion, we note that two district courts have applied that provision retroactively without reaching the constitutionality of such a retroactive application. See Brookins v. Goodson, 640 So.2d 110 (Fla. 4th DCA), review denied, 648 So.2d 724 (Fla. 1994); Clough v. Government Employees Ins. Co., 636 So.2d 127 (Fla. 5th DCA), review denied, 645 So.2d 452 (Fla. 1994). Because of our decision here, we disapprove those cases to the extent they can be read as approving the retroactive application of section 627.727(10).
We next address State Farm's contention that the trial judge should have directed a verdict in its favor because, under the "fairly debatable" standard, there was no bad faith as a matter of law. Alternatively, State Farm argues that the jury's verdict was contrary to the manifest weight of the evidence. Under the "fairly debatable" standard, a claim for bad faith can succeed only if the plaintiff can show the absence of a reasonable basis for denying the claim. Anderson v. Continental Ins. Co., 85 Wis.2d 675, 271 N.W.2d 368 (1978). To date, no Florida court has specifically adopted the "fairly debatable" standard in bad faith actions. Robinson v. State Farm Fire & Casualty Co., 583 So.2d 1063 (Fla. 5th DCA 1991). Moreover, the approach by Florida courts in bad faith actions has been described as "unsettled." Id. at 1067-68. One federal district court has expressly applied the "fairly debatable" standard to a Florida action but did so based on its use in other jurisdictions. See Reliance Ins. Co. v. Barile Excavating & Pipeline Co., 685 F. Supp. 839 (M.D.Fla. 1988). Florida differs, however, from most jurisdictions given that first-party bad faith actions are actionable only under section 624.155 and not the common law. Henderson, supra, 26 U.Mich.J.L.Ref. at 27-30. Additionally, as previously discussed, section 624.155 provides remedies for both first- and third-party causes of actions. Section 624.155 provides that an insurer has acted in bad faith if it has "[n]ot attempt[ed] in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for [the insured's] interest." § 624.155(1)(b)1. Because this specific standard is set forth in section 624.155, we find it unnecessary and inappropriate to apply the "fairly debatable" standard to bad faith actions in Florida.
Recently, several district courts have also rejected the fairly debatable standard in both first-party unfair insurance trade practices and third-party bad faith actions, applying instead a totality-of-the-circumstances standard somewhat similar to the standard set forth in the statute. John J. Jerue Truck Broker, Inc. v. Insurance Co. of N. Am., 646 So.2d 780 (Fla. 2d DCA 1994); Robinson. In Robinson, the Fifth District Court of Appeal evaluated a number of Florida cases in concluding that a totality-of-the-circumstances approach should be used in evaluating third-party bad faith actions. The court determined that at least five factors should be *63 taken into account: (1) whether the insurer was able to obtain a reservation of the right to deny coverage if a defense were provided; (2) efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; (3) the substance of the coverage dispute or the weight of legal authority on the coverage issue; (4) the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage; and (5) efforts made by the insurer to settle the liability claim in the face of the coverage dispute. 583 So.2d at 1068. In Jerue, the Second District Court of Appeal adopted this same approach, finding that the second, third, and fourth factors promulgated in Robinson should likewise be considered in a first-party cause of action. We agree, finding that a determination of whether an insurer has acted "fairly and honestly toward its insured and with due regard for [the insured's] interests" includes a consideration of these factors. Consequently, we reject the fairly debatable standard of determining whether a reasonable basis exists for rejecting coverage.
State Farm contends that we recently adopted the fairly debatable standard in Imhof v. Nationwide Mutual Ins. Co., 643 So.2d 617 (Fla. 1994). In Imhof, we addressed the issue of whether a complaint for bad faith must allege that there has been a prior determination of the extent of damages. In answering that question in the affirmative, we stated in dicta that "[a]n insurer has been found to have acted in bad faith when the disputed claim is determined not to be `fairly debatable.'" 643 So.2d at 619 (citing to Reliance Ins. Co. v. Barile Excavating & Pipeline Co., 685 F. Supp. 839, 840 (M.D.Fla. 1988)). That statement was irrelevant to the claim at issue and the application of the standard was not otherwise discussed in the opinion. Nevertheless, to clarify that this Court has not adopted the "fairly debatable" standard in actions brought under section 624.155, we recede from Imhof to the extent it could be read as holding to the contrary.
Interestingly, in the 1990 amendment to section 624.155, the Legislature, in addition to other changes, provided that "any person may obtain a judgment under either the common law remedy of bad faith or this statutory remedy, but shall not be entitled to a judgment under both remedies." § 624.155(7), Fla. Stat. (Supp. 1990). Because the statute otherwise makes specific reference to third-party causes of action brought under the statute, see, e.g., 624.155(2)(b)4., it is clear that a third-party action can now be brought under either section 624.155 or the common law. This is untrue for first-party actions because, as discussed previously, first-party actions do not exist at common law. For consistency, however, we find that the standard set forth in this opinion should apply equally to third-party actions brought at common law.
We turn now to State Farm's remaining claims. We reject as being without merit State Farm's contentions that the jury's verdict was contrary to the manifest weight of the evidence and that the jury was inappropriately instructed regarding State Farm's duty to investigate. As to the latter claim, a review of the jury instructions provided in this case reflects that the judge instructed the jury consistent with our findings in this opinion as well as with prior Florida case law. See Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980) (insurer must investigate the facts), cert. denied, 450 U.S. 922, 101 S.Ct. 1372, 67 L.Ed.2d 350 (1981); Hollar v. International Bankers Ins. Co., 572 So.2d 937 (Fla. 3d DCA 1990) (same), review dismissed, 582 So.2d 624 (Fla. 1991).
Finally, State Farm argues that, if the trial judge's final judgment is reversed, the attorney fee award must be reconsidered. The record reflects that the trial judge awarded attorney's fees based on the lodestar formula criteria set forth in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), and Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). One of the criteria contained therein for considering a reasonable attorney's fee is "[t]he amount involved and the results obtained." Rowe, 472 So.2d at 1150. See also Quanstrom, 555 So.2d at 834 (factors in determining whether a multiplier is necessary include a consideration of "whether *64 any of the factors set forth in Rowe are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client") (emphasis added). As a result of our decision in this case, the damages awarded to the Laforets, not including attorney's fees and costs, are being reduced from $265,753 (the amount of the excess judgment plus interest) to $24,000 (the amount of the jury's verdict). Consequently, "the amount involved and the results obtained" have changed since the initial award of attorney's fees. Under these circumstances, we find that the award of attorney's fees must be reconsidered by the trial judge.
In conclusion, we find that section 627.727(10) can apply prospectively only. Accordingly, we answer the certified question in the negative, and we quash the decision of the district court. We also reject the application of the "fairly debatable" standard to insurance bad faith actions, specifically adopting instead the standard set forth in section 624.155. We remand this case to the district court with directions that the final judgment entered in this action be reversed and that this cause be remanded for entry of a new final judgment consistent with the dictates of this opinion.
It is so ordered.
GRIMES, C.J., and HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion, in which SHAW and KOGAN, JJ., concur.
WELLS, Justice, concurring in part and dissenting in part.
I concur with the majority's decision that the "fairly debatable" standard should not be applied to bad-faith actions brought pursuant to section 624.155, Florida Statutes (1985). I also concur that the 1990 amendment to section 624.155 and the 1992 amendment to that same section through the adoption of section 627.727(10), Florida Statutes (Supp. 1992), do not apply to the 1986 cause of action at issue in this case. The 1990 act amending section 624.155 provides that it was to "take effect October 1, 1990, and shall apply to policies of contracts issued or renewed on or after that date." Ch. 90-119, § 55, Laws of Fla. Consequently, I conclude that the legislature did not expressly mandate that the damages recoverable in this statutory cause of action, which accrued prior to October 1, 1990, included damages in excess of policy limits. I therefore concur in the result reached by the majority.
I dissent, however, as to the majority's conclusion that section 627.727(10) is only prospective in nature. I conclude that section 627.727(10) applies retroactively back to the date of the 1990 amendment to section 624.155 and, consequently, that section 627.727(10) applies to all insurance policies issued after October 1, 1990.
It is a fundamental rule of statutory construction that a statute should be construed so as to ascertain and give effect to the intention of the legislature. City of Boca Raton v. Gidman, 440 So.2d 1277, 1281 (Fla. 1983); see also City of Tampa v. Thatcher Glass Corp., 445 So.2d 578, 579 (Fla. 1984) (citing Deltona Corp. v. Florida Public Service Comm'n, 220 So.2d 905, 907 (Fla. 1969)). The timing and stated legislative intent of section 627.727(10) indicate that the legislature in enacting this statute was reacting to this Court's interpretation of section 624.155 following its amendment in 1990.[2] In McLeod v. Continental Insurance Co., 591 So.2d 621, 626 (Fla. 1992), this Court concluded that pursuant to section 624.155 and the amendment thereto, an insured bringing a first-party action against an insurer could only recover damages that were the natural, proximate, probable, or direct consequence of the insurer's bad faith. The Court rejected the conclusion that first-party bad-faith damages should be fixed at the amount of the excess judgment. Id. In response, the legislature *65 expressly provided that first-party damages are to encompass the "total amount of the claimant's damages, including the amount in excess of the policy limits." § 627.727(10), Fla. Stat. (Supp. 1992).
While the legislature in enacting section 627.727(10) further provided in a legislative note that this section "shall apply to all causes of action accruing after the effective date of section 624.155, Florida Statutes,"[3] I conclude that it was referring to the effective date of section 624.155 as amended in 1990. The legislature's intent should be given effect regardless of whether such construction varies from the statute's literal meaning. State v. Webb, 398 So.2d 820, 824 (Fla. 1981); Garner v. Ward, 251 So.2d 252, 256 (Fla. 1971). The legislative note accompanying section 627.727(10) implies that the statute's effective date is 1982, but I believe the only interpretation of the note compatible with the legislative history of section 624.155 and the McLeod decision is one recognizing the effective date of section 624.155 as October 1, 1990, the effective date of the 1990 amendment. This interpretation gives reasonable effect to the legislative intent expressed in both the note accompanying the 1990 amendment and the note accompanying the enactment of section 627.727(10), whereas the majority's opinion interpreting section 627.727(10) as prospective totally disregards and nullifies the legislative intent expressed in these provisions. Further, my interpretation is in accord with this Court's decision in Lowry v. Parole and Probation Commission, 473 So.2d 1248 (Fla. 1985), recognizing that when an amendment to a statute is enacted soon after a controversy regarding the statute's interpretation, a court may consider that amendment as a legislative interpretation of the law rather than a substantive change.
It is well-settled in this State that insurance contracts are to be construed so as to include the provisions of insurance statutes. See Grant v. State Farm Fire & Casualty Co., 638 So.2d 936 (Fla. 1994); Southeast Title & Ins. Co. v. Austin, 202 So.2d 179, 180 (Fla. 1967); Standard Accident Ins. Co. v. Gavin, 184 So.2d 229 (Fla. 1st DCA 1966), cert. dismissed, 196 So.2d 440 (Fla. 1967). This principle, in conjunction with my analysis above, leads to the conclusion that all policies issued after the effective date of the 1990 amendment to section 624.155 should conform with that statute as well as its proper legislative construction as evidenced by section 627.727(10).
SHAW and KOGAN, JJ., concur.
NOTES
[1] Amicus Florida Defense Lawyers Association claims that section 627.727(10) not only is unconstitutional when retroactively applied but also is unconstitutional as a whole. We reject this argument without discussion based on our acknowledgment in McLeod that such a provision would be appropriately within the province of the Legislature.
[2] The 1990 amendment to section 624.155 provided in pertinent part that:

The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the insured and may include an award or judgment in an amount that exceeds the policy limits.
Ch. 90-119, § 30, Laws of Fla.
[3] Ch. 92-318, § 80, Laws of Fla.