[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14794
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cv-00977-JSM-AEP

MICHAEL KING,

Plaintiff-Appellant,

PHYLLIS KING,

Plaintiff,

versus

GOVERNMENT EMPLOYEES INSURANCE COMPANY,

Defendant-Appellee.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 4, 2014)

Before JORDAN, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

Michael King appeals the judgment in favor of the Government Employees Insurance Company ("GEICO") on King's claim against GEICO for bad-faith failure to settle a claim, brought pursuant to Fla. Stat. § 624.155. A federal jury returned a verdict finding that GEICO had not acted in bad faith. Upon entry of judgment on the verdict, this appeal followed. After a careful review of the record and the briefs of the parties, we affirm the judgment of the district court.

## I.

Michael King was injured in a three-car accident on August 11, 2004. King was driving a vehicle owned by Donna Buttermore, a passenger in the vehicle at the time of the accident who was insured by GEICO, when he was rear-ended by a car driven by Holly Hahto, who was insured by Liberty Mutual. At some point, Hahto was rear-ended by a car driven by Kristin Livingston, who was insured by USAA. The precise causal chain of events was disputed, but it is immaterial to our resolution of this appeal. Hahto and Livingston were both cited for careless driving; King was not. Buttermore reported the accident to GEICO the same day.

Immediately after the accident, King sought treatment and was diagnosed with lumbar strain, contusion to the right knee and left elbow, and wrist strains. Between the time of the accident and April 2006, King continued to receive medical treatment, described by the district court as follows:

> Over the next eighteen months, King presented to multiple physicians. Dr. Rog, King's primary physician[,] referred him to Dr. Fiore, an

2

orthopedic specialist, who recommended physical therapy and chiropractic care after reviewing a whole body bone scan and MRI which indicated degeneration in the lumbar spine. King then treated with Dr. Valdes, a chiropractor, and Dr. Garner, a neurologist. Dr. Garner identified a herniated nucleus polposus at L4-5 that made him a surgical candidate, as well as ascribing him with a 25% permanent impairment rating. She referred him to the Laser Spine Institute where he was recommended for a nerve root decompression surgery. King returned to Dr. Fiore who disagreed with immediate surgical intervention, rather suggesting that conservative care first be exhausted, although recognizing the probable necessity of surgery in the future. Finally, Dr. Turner, another orthopedic surgeon, recommended a lumbar percutaneous discectomy.

On April 13, 2006, King's attorney, Joseph R. Bryant, submitted offers of settlement to each of the three insurance carriers implicated in the accident. The offers recounted the medical treatment that King had received, resulting in $19,515.15 in medical bills, and that he was likely to require in the future, and advised that King had exhausted his Personal Injury Protection benefits with GEICO.[1] King demanded the $100,000 liability policy limits from Liberty Mutual, $50,000 of the $100,000 liability policy limits from USAA, and the full $25,000 underinsured/uninsured motorist ("UM") policy limits from GEICO. King then settled with USAA.

Walter Dunn, a GEICO claims examiner, reviewed King's UM policy limits demand and evaluated his claim. Dunn determined that the value of King's claim was within one of the tortfeasor's $100,000 policy limits. After consulting with his

---

[1] King was covered under Buttermore's GEICO policy as a Class II insured.

claims manager, Dunn advised King in a letter dated May 8, 2006, that GEICO would not make an offer under the UM policy because the value of King's claim was within the "within the available tort limits."

Approximately one month later, in June 2006, King filed his initial complaint in the underlying litigation in Florida state court against GEICO and Hahto.[2]  At the same time, he filed a Civil Remedy Notice ("CRN") with the Department of Insurance asserting that GEICO had not attempted to settle his claim in good faith.  In response to the CRN, GEICO again denied King's demand for UM benefits.  Later, in 2007, GEICO attempted to tender the full $25,000 UM policy limits to King after receiving his medical records, which showed that King had undergone a more serious surgery, but King did not accept the tender on the basis that it was untimely.  At some point in 2008, Liberty Mutual settled King's claim against Hahto for payment of its $100,000 policy limits and also paid an undisclosed sum to settle a potential bad-faith claim against Liberty Mutual.

In July 2009, the UM claim was tried before a jury, which returned a verdict in favor of King.  The jury found that King had sustained damages in the amount of $1,638,171.00,[3] and determined that Hahto was fully at fault.  The state court then entered a partial final judgment against GEICO on July 28, 2009, reducing the

---

[2]  Michael King's wife was a plaintiff throughout most of the proceedings but was dismissed in the subsequent bad-faith action in September 2013.  King is the only appellant.

[3]  This amount includes recovery on Mrs. King's claim for loss of consortium.  The amount in favor of Michael King alone was $1,588,171.00.

judgment amount to GEICO's $25,000 UM policy limits, and reserved jurisdiction over bad-faith claims. GEICO appealed, and the Florida Second District Court of Appeal issued a per curiam affirmance without a written opinion.

In April 2010, King amended his complaint to add a claim for statutory bad faith against GEICO under Fla. Stat. § 624.155. Later that month, GEICO removed King's bad-faith claim from state court to federal district court in the Middle District of Florida. The district court then denied King's motion to remand the claim. The case proceeded to trial before a federal jury, which found that GEICO had not acted in bad faith. King timely brings this appeal.

King raises four main contentions on appeal, arguing that the district court erred by (1) failing to remand the bad-faith claim to state court because GEICO's notice of removal was not timely filed within one year of the commencement of the UM action under 28 U.S.C. § 1446(b) (2010) (amended 2011)[4]; (2) failing to give preclusive effect, for purposes of determining damages for the bad-faith claim, to the state-court jury verdict in excess of the policy limits; (3) failing to give certain requested jury instructions; and (4) admitting evidence of Liberty Mutual's evaluation of King's claim but refusing to admit evidence of King's settlement with Liberty Mutual.

---

[4] Section 1446 was amended in 2011. *See* Pub. L. No. 112-63, 125 Stat. 758, § 103 (2011). The one-year limit is now codified at 28 U.S.C. § 1446(c)(1). Because this action was commenced before the effective date of the amendments, we apply the older version of § 1446(b). *See id.*, § 105(b).

## II.

We review *de novo* the denial of a motion to remand to state court. *Moore v. N. Am. Sports, Inc.*, 623 F.3d 1325, 1328 (11th Cir. 2010). The question whether to give preclusive effect to a state court's judgment is a question of law reviewed *de novo*. *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1288 (11th Cir. 2009). A district court's refusal to give a requested jury instruction is reviewed for an abuse of discretion. *Burchfield v. CSX Transp., Inc.*, 636 F.3d 1330, 1333 (11th Cir. 2011). A court abuses its discretion if "(1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party." *Id.* at 1333-34 (quotation marks omitted). We review the district court's evidentiary rulings for an abuse of discretion. *Id.* at 1333.

## III.

### A.    *Timeliness of Removal*

Federal courts are courts of limited jurisdiction. A defendant's right to remove an action against it from state to federal court is created and defined by statute, and removal statutes are strictly construed. *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1271 (11th Cir. 2004); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). Consequently, all doubts about

the propriety of removal should be resolved in favor of remand. *See Miedema v. Maytag Corp.*, 450 F.3d 1322, 1328-29 (11th Cir. 2006).

Section 1446 contains two time restrictions on removing cases from state court. *See* 28 U.S.C. § 1446(b) (2010) (amended 2011). First, the notice of removal must be filed within thirty days of the initial pleading showing that the action is removable. Second, a case may not be removed on the basis of diversity jurisdiction more than one year after "commencement of the action." *Id.*

Here, GEICO removed the bad-faith claim to federal court in April 2010, well over three years after King filed the initial complaint in state court in June 2006. As a result, King asserts, GEICO's notice of removal was untimely, the judgment should be vacated, and this action should be remanded to state court. GEICO responds that its notice of removal was timely because the bad-faith claim is a "separate and independent" cause of action under Florida law that was separately removable from the underlying action for purposes of § 1446(b).

The federal district courts of Florida are divided on this question. In line with King's position on appeal, some courts have concluded that the action is "commenced" when the initial complaint is filed because, even if the bad-faith claim is a separate and independent claim, amending the complaint to add such a claim does not start the action anew. *See, e.g.*, *Barroso v. Allstate Prop. & Cas. Ins. Co.*, 958 F. Supp. 2d 1344 (M.D. Fla. 2013); *van Niekerk v. Allstate Ins. Co.*,

7

No. 12-62368, 2013 WL 253693 (S.D. Fla. Jan. 23, 2013).  On the other hand, other courts have concluded, as the district court did in this case, that the action is "commenced" for purposes of § 1446(b) once the bad-faith claim accrues and has been filed, because a bad-faith claim is a "separate and independent" cause of action under Florida law.  *See, e.g.*, *Love v. Prop. & Cas. Ins. Co. of Hartford*, No. 8:10-649, 2010 WL 2836172 (M.D. Fla. July 16, 2010); *Lahey v. State Farm Mut. Auto. Ins. Co.*, No. 8:06-1949, 2007 WL 2029334 (M.D. Fla. July 11, 2007).  Ultimately, however, we do not resolve this dispute, for reasons we explain below.

This Court previously has held that the timeliness of removal is a procedural defect, not a jurisdictional one.  *See Moore*, 623 F.3d at 1329; *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751-52 (11th Cir. 2010); *In re Uniroyal Goodrich Tire Co.*, 104 F.3d 322, 324 (11th Cir. 1997) (referring to the one-year limit as procedural, not jurisdictional).  The Supreme Court and the other circuits to have addressed the issue are in accord that the one-year limit on removal of diversity cases is non-jurisdictional.  *See, e.g.*, *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75 n.13, 117 S. Ct. 467 (1996) (referring to a contention regarding the one-year limit in § 1446(b) as a "nonjurisdictional argument"); *Music v. Arrowood Indem. Co.*, 632 F.3d 284, 287-88 (6th Cir. 2011) (holding one-year limit non-jurisdictional); *Ariel Land Owners, Inc. v. Dring*, 351 F.3d 611, 614-15 (3d Cir. 2003) (same); *Barnes v. Westinghouse Elec. Corp.*, 962 F.2d 513, 516 (5th Cir. 1992) (same).

Accordingly, removal outside the one-year limit in § 1446(b) is a non-jurisdictional defect.

Because it does not affect the district court's subject-matter jurisdiction, "[a]ny untimeliness in the filing of the notice of removal in this case would be an insufficient basis to vacate the judgment and remand for a new trial in state court." *Moore*, 623 F.3d at 1329. Relying on *Caterpillar*, *Moore* indicated that the critical question on appeal, even if the district court erred in failing to remand based on the untimeliness of removal, is whether the "the requirements for diversity jurisdiction were met by the time the district court entered judgment." *Id.* If the district court had subject-matter jurisdiction upon entry of judgment, the untimeliness of removal is not "fatal to the ensuing litigation," and we may review the merits of the case on appeal. *See id.* at 1329-30.

In this case, there is no dispute that the district court had diversity jurisdiction both at the time of removal and when the court entered judgment.[5] *See* 28 U.S.C. § 1332. Because the court had subject-matter jurisdiction and the bad-faith claim was fully tried in federal court, "considerations of finality, efficiency, and economy become overwhelming." *Caterpillar*, 519 U.S. at 74, 117 S. Ct. 467. Accordingly, we do not decide the question of whether the district court erred in failing to remand the case, even though King timely objected to removal, because

---

[5] GEICO's notice of removal alleged that King was a citizen of Florida and GEICO was a Maryland corporation with its principal place of business in Maryland.

even if it did, any untimeliness is an insufficient basis to vacate the judgment and remand for a new trial. *Moore*, 623 F.3d at 1329.

## B.     *Effect of the State-Court Excess Jury Verdict*

King next contends that the district court erred by failing to give preclusive effect to the state-court jury verdict in his favor on the underlying UM claim. For purposes of determining damages on his bad-faith claim, he asserts, the district court was bound by the state-court jury verdict through collateral estoppel. Therefore, the district court erred by requiring King to litigate the issue of the "total amount of damages" during the bad-faith trial because, King argues, that issue had already been "fully litigated and determined" in the underlying action.

Florida law recognizes a statutory cause of action for a "first-party" bad-faith claim, independent of any contractual obligation, by an insured against the insured's own insurer for not attempting to settle claims in good faith. Fla. Stat. § 624.155; *see State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 58-59 (Fla. 1995). To state a claim for bad faith, an insured must allege that there has been a determination of the existence of liability on the part of the uninsured or underinsured tortfeasor and of the extent of the plaintiff's damages. *See Imhof v. Nationwide Mut. Ins. Co.*, 643 So. 2d 617, 618-19 (Fla. 1994); *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991).

10

Under Fla. Stat. § 627.727(10), "damages in first-party bad faith actions are to include the total amount of a claimant's damages, including any amount in excess of the claimant's policy limits without regard to whether the damages were caused by the insurance company." *Laforet*, 658 So. 2d at 60.[6]  As described by the Florida Supreme Court in *Laforet*, the purpose of § 627.727(10), which was enacted in 1992, was to make insurers found to have acted in bad faith liable not only for "damages proximately caused by the bad faith," but also for "a penalty consisting of the entire amount of the excess judgment without regard to proximate causation." *Id.* at 60-61.  Thus, an insured prevailing in a bad-faith action may recover "any amount in excess of the claimant's policy limits awarded by a judge or jury in the underlying claim." *Id.* at 57-58.

King contends that the legislative purpose in enacting § 627.727(10) was to make the excess verdict in an underlying UM action binding as to damages in a subsequent bad-faith action.  GEICO disagrees, arguing that the excess verdict is not a "judgment" that could be binding through collateral estoppel, because judgment in a UM action cannot exceed the policy limits, which, in this case, was $25,000.  The district court found that giving preclusive effect to the underlying

---

[6]  Section 624.155 also has a damages provision: "The damages recoverable pursuant to this section shall include those damages which are a reasonably foreseeable result of a specified violation of this section by the authorized insurer and may include an award or judgment in an amount that exceeds the policy limits." Fla. Stat. § 624.155(8).

excess verdict would deprive GEICO of due process because, under Florida law, GEICO could not have appealed the excess verdict.

The parties have not identified any controlling authority providing an answer to the question King poses, and our independent review of Florida law is similarly inconclusive. Although an excess jury verdict in an underlying UM action appears to be recoverable in a subsequent first-party bad-faith action, Florida courts have not clarified how those damages are to be found or awarded. *See Laforet*, 658 So. 2d at 61; Fla. Stat. § 627.727(10).

Nevertheless, we need not resolve the ambiguity with respect to damages because Florida law is clear that the insurance company must be "found to have acted in bad faith" for damages to be awarded. *See Laforet*, 658 So. 2d at 61; *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980) (to recover damages, an insured "must first establish by legally sufficient evidence that the insurance company acted in bad faith"). Here, the jury found that GEICO did not act in bad faith in failing to settle King's claim. Therefore, no damages could have been awarded to King for GEICO's alleged bad-faith failure to settle.

We are not persuaded by King's speculative assertion that he was prejudiced on the merits of the action because, by being required to litigate the issue of damages, the federal jury might have based its verdict on facts inconsistent with the state-court jury. The matter in issue in the district court—whether GEICO's

12

failure to settle was in bad faith—was not at issue in the state-court trial. Nor could it have been under Florida law since a bad-faith claim is a separate cause of action brought under § 624.155, which cannot be brought until after the conclusion of the underlying UM action on liability, which, in turn, is based on the insurance contract. *Blanchard*, 575 So. 2d at 1291. Florida law therefore specifically contemplates separate and successive jury trials in contested cases such as this one. *See Gutierrez*, 386 So. 2d at 785 ("The question of failure to act in good faith with due regard for the interests of the insured is for the jury."). In view of the related and intertwined nature of the two causes of action required to be tried separately, it is inescapable that some repetition of evidence must necessarily occur. But the fact that the evidence offered at both trials substantially overlapped does not mean that the relevant issues were the same or that the jury in the second trial was asked to find facts established by the first jury.

Moreover, even if the district court erred in allowing evidence relating to the amount of damages, any such error was harmless. The district court instructed the jury that the first issue for its determination was "whether GEICO acted in bad faith in handling the claim of Michael King for uninsured motorist benefits," and, if its verdict was for GEICO, the jury "will not consider the matter of damages."[7]

---

[7] The court also instructed the jury, with respect to damages, that "the August 11th, 2004, motor vehicle accident was the legal cause of loss, injury, or damage to Michael King," "Holly Hahto was 100 percent liability for the damage, loss, or injuries sustained by Michael

13

*See Laforet*, 658 So. 2d at 63. "We presume a jury follows its instructions." *Gowski v. Peake*, 682 F.3d 1299, 1315 (11th Cir. 2012). The jury's verdict answered that first question, and only that first question, in the negative: King did not prove by a preponderance of the evidence that GEICO acted in bad faith in failing to settle King's claim. Consequently, any error committed by the district court in requiring King to litigate damages was harmless under the circumstances because there is no indication that it had any effect on the outcome of the case. The jury found that GEICO had not acted in bad faith, so no damages could have been awarded. We therefore affirm on this issue.

C.    *Requested Jury Instructions*

King next contends that the district court erred in failing to give two requested jury instructions. The first requested instruction concerned recoverable damages under § 627.727(10). As explained above, we find any error with respect to this issue to be harmless because the jury did not reach the issue of damages. The second requested instruction sought to instruct the jury on negligence as it related to the insurer's duty of care in these circumstances:

> Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith.

King in the August 11th, 2004, motor vehicle accident," and "Michael King sustained a permanent injury within a reasonable degree of medical probability as a result of the August 11th, 2004, motor vehicle accident."

14

The instruction went on to define negligence.  The district court gave the following instruction on bad faith:

> Bad faith on the part of an insurance company is failing to settle a claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insureds and with due regard for their interests.

This is the standard instruction in Florida for a claim based on an insurer's bad-faith failure to settle.  *See* Florida Standard Jury Instruction 404.4.

In support of his requested instruction, King cites to *Gutierrez*, 386 So. 2d at 785, and *Berges v. Infinity Ins. Co.*, 896 So. 2d 665 (Fla. 2004).  In relevant part, *Berges* explained an insurer's duty to its insured, with respect to third-party claims, as follows:

> An insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. . . . The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.  Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith.

*Berges*, 896 So. 2d at 668-69 (quoting *Gutierrez*, 386 So. 2d at 785 (citations omitted)).  Without the negligence instruction, King contends, "the jury was not provided an integral piece of the matrix to analyze GEICO's conduct."

15

The standard for determining insurer liability in this case is bad faith, rather than negligence, but "consideration may be given to the negligence of the insurer in determining whether it has breached its duty to negotiate in good faith." *Thomas v. Lumbermens Mut. Cas. Co.*, 424 So. 2d 36, 38 (Fla. Dist. Ct. App. 1982); *see also Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 483 F.3d 1265, 1276 (11th Cir. 2007). Therefore, at least the first part of King's requested instruction correctly stated the law regarding an issue properly before the jury.

Nevertheless, we cannot say, considering the totality of the circumstances, that the failure to give the requested negligence instruction resulted in prejudicial harm to King. *See Burchfield*, 636 F.3d at 1334. The jury was properly instructed on the standard for bad faith, which King does not contest. While King's proposed instruction may have assisted the jury in deciding the question of bad faith, it also may have had the opposite effect of confusing the jury by implying that the jury could find GEICO liable even if it found GEICO only negligent in failing to settle.

King's reliance on *Tran v. Toyota Motor Corp.*, 420 F.3d 1310 (11th Cir. 2005), and *Palm Beach Atlantic College, Inc. v. First United Fund, Ltd.*, 928 F.2d 1538 (11th Cir. 1991), to suggest that reversal is required because the jury instruction did not discuss negligence is likewise misplaced. Unlike in *Tran* and *Palm Beach Atlantic College, Inc.*, the district court here did not fail to give an

16

instruction on an independent basis for liability.  Nor did the court misstate the applicable burden of proof.  The court's instruction on bad faith also did not preclude King from making relevant arguments regarding GEICO's duty to investigate and evaluate King's claim.  Accordingly, the district court did not abuse its discretion in refusing to give the negligence instruction.

## D.    *Admission of Evidence*

Finally, King argues that the court erred in selectively admitting evidence about the handling of King's claim by Liberty Mutual.  During the trial, the district court allowed GEICO's counsel to elicit testimony from its employees that Liberty Mutual's evaluation and adjustment of King's claim were consistent with GEICO's.  But the court did not allow King's counsel to elicit testimony that Liberty Mutual settled King's claim by paying its policy limits as well as bad-faith damages.  A district court's evidentiary ruling will not be overturned "unless the moving party establishes a substantial prejudicial effect."  *Burchfield*, 636 F.3d at 1333 (quotation marks omitted).  We afford broad discretion to the district court's assessment of the probative value of the proffered evidence weighed against other factors counseling against admissibility.  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384, 128 S. Ct. 1140 (2008).

The testimony regarding Liberty Mutual's evaluation and adjustment of King's claim was probative of GEICO's assessment of the claim and its stated

17

reason for denying King's initial settlement offer: that the value of King's claim was within the available policy limits of the tortfeasor's insurance company. *See USAA Cas. Ins. Co. v. Shelton*, 932 So. 2d 605, 608 (Fla. Dist. Ct. App. 2006) ("The purpose of [UM coverage] is to provide a source of recovery when the insured has been injured by a tortfeasor with insufficient or no insurance."). By contrast, testimony to the effect that Liberty Mutual settled King's potential bad-faith claims had little if any relevance to the question of whether GEICO acted in bad faith, and it also had the potential to mislead the jury and unfairly prejudice GEICO. King has not shown that either evidentiary ruling had a substantial prejudicial effect, so we defer to the district court's evidentiary rulings.

## VI.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**