857 So.2d 913 (2003)
Senator Alex DIAZ de la PORTILLA, Appellant,
v.
FLORIDA ELECTIONS COMMISSION, Appellee.
No. 3D02-574.
District Court of Appeal of Florida, Third District.
September 10, 2003.
Rehearing Denied October 29, 2003.
*915 Sale & Kuehne, P.A., and Benedict P. Kuehne, Miami, for appellant.
Charles J. Crist, Jr., Attorney General, and John J. Rimes, III, Assistant Attorney General, for appellee.
Before COPE, LEVY and FLETCHER, JJ.
COPE, J.
State Senator Alex Diaz de la Portilla appeals an order of the Florida Elections Commission imposing fines of $311,000 for violations of Florida's campaign financing law. It is undisputed that significant numbers of contributions and expenditures were omitted from the Senator's campaign treasurer's reports in the 1999 special election. The issues on this appeal include how many violations were properly charged; what is the standard of proof; and whether the evidence supports the conclusion that the claimed violations were willful rather than inadvertent. We affirm in part and reverse in part.

I.
On October 29, 1999, the Secretary of State announced a vacancy in State Senate District 34 in Miami-Dade County.
*916 The election timetable was short. A first primary was scheduled December 14, 1999, some six weeks after the vacancy was announced.
At that time, Senator Diaz de la Portilla was a state representative. He resigned his seat in the House of Representatives and qualified for the election for the State Senate seat. Three other candidates qualified.
Because all four candidates were Republicans, this meant that all registered voters were eligible to participate in the election. See Art. VI, § 5(b), Fla. Const. (as amended 1998). In the first primary, Senator Diaz de la Portilla received a majority of the votes, and was elected.
In January 2000 a complaint was made to the Florida Elections Commission that the Diaz de la Portilla campaign ("Campaign") had violated Florida's campaign financing law. See ch. 106, Fla. Stat. (1999). The Elections Commission found probable cause and instituted proceedings against Senator Diaz de la Portilla. Soon thereafter the Campaign filed amended treasurer's reports disclosing a significant number of previously unreported contributions and expenditures.
The case proceeded to a hearing before an administrative law judge. The main disputed issue before the law judge was whether there had been any willful violation of the law by then-candidate Diaz de la Portilla personally.
The campaign treasurer testified that he had devised a system for photocopying all contribution checks, and for recording all expenditures. He had used this system successfully in the past. He turned the responsibility over to campaign volunteers who then failed to follow the instructions. The treasurer spent his time campaigning, spent little time in the office, and failed to supervise those who were handling the funds. He took responsibility for the incomplete reports.
The administrative law judge was satisfied the underreporting of contributions and expenditures had been neither premeditated nor intentional on the candidate's part. However, the administrative law judge concluded that the candidate bore responsibility under the provisions of chapter 106.
The administrative law judge found 309 violations of chapter 106. He recommended a fine of $79,500.
The Elections Commission adopted the administrative law judge's findings of fact and adopted his conclusions of law with modifications. The Commission ruled that the findings supported the existence of 311 violations of chapter 106. The Commission increased the civil penalty to $1,000 per count, for a total of $311,000.
Senator Diaz de la Portilla has appealed.

II.
The Legislature has established a high standard which must be met in order for a fine to be imposed under chapter 106, Florida Statutes.
1. The Commission may impose a fine of up to $1,000 per count for a willful violation of chapter 106. See §§ 106.25(3), 106.265(1), Fla. Stat. (1999).[1]
A willful violation is a knowing violation of the statute. Id. § 106.37. A willful violation also includes a reckless violation, that is, an act showing a reckless disregard *917 for whether the action is required or permitted under chapter 106. Id.[2]
No fine can be imposed for an inadvertent violation, nor can any fine be imposed where the defending party was negligent, that is, where the defending party failed "to exercise the degree of care that someone of ordinary prudence would have exercised in the same circumstance ...." Black's Law Dictionary 1058 (7th edition 1999) (defining "negligent").
2. Because this is a civil statute of a penal nature, any ambiguity in the substantive statute must be construed in favor of the defending party and against the Commission. See United Wisconsin Life Ins. Co. v. Office of Ins. Regulation, 849 So.2d 417 (Fla. 1st DCA 2003), and cases cited therein.
3. We agree with the administrative law judge that the standard of proof in a case seeking fines under chapter 106 is clear and convincing evidence. See Dept. of Banking and Fin. v. Osborne Stern & Co., 670 So.2d 932, 935 (Fla.1996); Latham v. Florida Comm'n on Ethics, 694 So.2d 83, 84-86 (Fla. 1st DCA 1997). We reverse the Commission's ruling that the correct standard is preponderance of the evidence.[3]
4. There is no vicarious liability under chapter 106. The administrative law judge found that the campaign treasurer *918 in this case had been reckless. The candidate is not vicariously liable for the acts of the campaign treasurer. In order to impose a fine on the candidate, there must be a determination that the candidate himself is guilty of a willful violation as defined by the statute.

III.
The Commission charged the Senator with three violations of subsection 106.07(5), Florida Statutes (1999), which requires the candidate and his or her campaign treasurer to certify the correctness of each campaign treasurer's report.
The key features of the campaign financing law are:
(1) The candidate shall appoint a campaign treasurer and campaign depository;
(2) All contributions and expenditures must go through the campaign depository; and
(3) The campaign must file public reports of the contributions and expenditures at the times provided by law.
The Campaign complied with items one and two. The candidate designated a campaign treasurer with prior experience, and designated a campaign depository. All of the contributions and expenditures went through the depository.
As to item three, campaign treasurer's reports were due during the special election. These omitted significant numbers of contributions and expenditures.
Florida law requires that a campaign treasurer's report be signed by both the campaign treasurer and the candidate. The statute provides, in part:
(5) The candidate and his or her campaign treasurer ... shall certify as to the correctness of each report; and each person so certifying shall bear the responsibility for the accuracy and veracity of each report.
§ 106.07(5), Fla. Stat. (1999). Thus, a candidate or campaign treasurer who willfully violates this statute is subject to being fined.
The campaign treasurer in this case testified that he personally prepared all of the campaign treasurer's reports. Thus, the campaign treasurer's certification is based on the campaign treasurer's personal knowledge and inspection of the campaign finance records.
The candidate's certification of the correctness of the report, however, presents a more problematic issue. The issue on which the two sides disagree is, what steps must the candidate take prior to signing the certification on the campaign treasurer's report?
We first consider the apparent reason that this provision was added to the campaign finance law. Under an earlier version of the election law, the candidate was required to report contributions and expenditures to his or her campaign treasurer. State v. Buchanan, 189 So.2d 270, 270-71 (Fla. 3d DCA 1966) (quoting § 99.161(8)(a), Fla. Stat. (1963)). The statute went on to say, "`The campaign treasurer shall certify as to the correctness of each report and the candidate shall also bear the responsibility for the accuracy and veracity of each report.'" 189 So.2d at 271 (quoting § 99.161(8)(c), Fla. Stat. (1963)).
In Buchanan the candidate was charged with accepting contributions which he failed to disclose to his treasurer, and giving the campaign treasurer affirmatively incorrect information, which the campaign treasurer included in his report. Eight criminal charges against the candidate for false campaign reporting were dismissed because the candidate was not the reporting officer and had not certified to the *919 accuracy of the report. 189 So.2d at 272. In 1973, the campaign finance law was rewritten to include the requirement that the candidate and campaign treasurer both certify as to the correctness of each treasurer's report. Ch. 73-128, § 7, Laws of Fla. (initially codified as § 106.07(6), Fla. Stat. (1973)); see also State v. Doyen, 224 Kan. 482, 580 P.2d 1351, 1355 (1978).
Against that background, the candidate's certification is, at a minimum, his sworn statement that all contributions and expenditures have, to his knowledge, gone through the campaign depository and have been properly disclosed to the treasurer. It also constitutes the candidate's representation that he has read the report and that it is, to his knowledge, complete and correct.

IV.
The Commission argues, however, and the administrative law judge accepted, the proposition that the candidate must do more before certifying to the correctness of the campaign treasurer's report. The Commission contends that the candidate must audit the work of the treasurer before signing the report.
Turning first to the responsibilities of the campaign treasurer, the treasurer must maintain complete and accurate records of all of the campaign's contributions and expenditures. The Division of Elections has promulgated forms for the treasurer's reports. The Commission contemplates (correctly) that the campaign treasurer will use the forms (or some equivalent) to record the contributions and expenditures as they occur. The treasurer should also maintain photocopies of the checks or other appropriate documentation. The worksheets and backup documents will then be used by the campaign treasurer to prepare each campaign treasurer's report for filing on the statutory deadlines. The treasurer is required to sign the report and does so, of course, on the basis of his or her personal knowledge and work in preparing the report. § 106.07(5), Fla. Stat. (1999).
Turning to the responsibility of the candidate, the candidate must sign the report, thereby certifying as to its correctness. Id. It is the Commission's position that before doing this, the candidate must audit the work of the treasurer. The Commission contemplates, as we understand it, that the candidate will compare, item by item, the entries on the treasurer's worksheet with the entries on the final typed report.
Relying on this proposition, the administrative law judge found that the candidate had "failed to examine any `back-up' documentation reflecting contributions or expenditures before certifying that his three erroneous campaign treasurer's reports were true, correct, and complete ...." R. 365. The administrative law judge apparently contemplated that the candidate would not only compare the final proposed report against the campaign treasurer's worksheets, but would also require the candidate to compare the entries on the treasurer's report against the photocopies of each incoming contribution check or outgoing payment check.
We simply do not think this is a reasonable interpretation of chapter 106. Such an "auditing" requirement is nowhere stated in chapter 106. And to choose the clearest example, we fail to see how such an auditing or verification requirement would even be physically possible in the case of statewide races for governor. If it is true that the candidate must personally verify every single entry and every piece of backup information supporting a contribution or expenditure, then the candidates would have to leave off campaigning completely, *920 or for great periods of time, to personally recheck the work the campaign treasurer has done. It is true that local political campaigns are smaller than statewide campaigns, but chapter 106 does not distinguish between state and local offices in the reporting requirements.
The campaign treasurer is a formally designated campaign officer under the statute, see § 106.021, Fla. Stat. (1999), who is subject to being fined by the Commission (just like the candidate) if the campaign treasurer commits willful violations of the election law. Id. §§ 106.19, 106.25(3), 106.265(1). In the case of the treasurer's report, the report bears the signatures of both the treasurer and the candidate, and either or both are subject to discipline in the event of a willful violation.
We think the better interpretation of the statutory scheme is that the candidate is allowed to rely on the work of the campaign treasurer in maintaining the campaign records and preparing the treasurer's reports, so long as all of the contributions and expenditures are routed through the campaign depository, and the candidate has appointed a campaign treasurer who is qualified to perform the duties of the office. The candidate must, however, conduct a facial review of the report to make sure that there are no errors or omissions based on the candidate's own knowledge of the campaign and its financial affairs.
In the present case, the administrative law judge concluded that the candidate had been reckless because each time he signed the treasurer's report, he did not examine any of the treasurer's worksheets or other underlying documentation. Because we conclude that the candidate did not have the duty to conduct such a review, the ruling below was legally erroneous under this theory.[4]
The administrative law judge also found that the candidate failed to supervise the campaign treasurer. We conclude that this part of the administrative law judge's findings is not supported by the evidence.
The campaign treasurer testified that he had acted as campaign treasurer on previous occasions, without encountering any problems or being the subject of any discipline. We take judicial notice of the fact that the Division of Elections issues a handbook for treasurers. See § 106.22(2), Fla. Stat. (1999). The treasurer testified that he received the current manual and attended the training session for campaign treasurers.
It is difficult to see what else the candidate could have told the campaign treasurer that the campaign treasurer did not already know. The treasurer was well aware that he was supposed to be keeping complete records of every contribution and every expenditure, so as to be able to fill *921 out the required campaign treasurer's reports.
The administrative law judge found that the treasurer was reckless, R. 366, and we agree. The treasurer delegated the record keeping responsibility to subordinates, signed checks in blank, stayed away from the campaign office two or three days at a time, and failed to verify that the record keeping responsibilities were being carried out as he had instructed his subordinates to do.
So long as a qualified person has been appointed as campaign treasurer, especially someone with prior experience in that position, we fail to see why the candidate should anticipate that the treasurer will abdicate the most basic functions of maintaining current and complete records of the contributions and expenditures. The Commission's position again appears to be one in which the candidate is required to double check all of the work of the treasurerbut if the candidate is to do this, then there is no need for the position of treasurer.

V.
The next question is whether the ruling below should be affirmed on an alternative theory supported by the record. See Dade County School Board v. Radio Station WQBA, 731 So.2d 638, 644-46 (Fla.1999). We conclude that the answer is yes.
As already stated, it is the duty of the candidate to read the treasurer's report before signing it, and be alert for any errors which, based on the candidate's own knowledge, appear on the face of the report. Failure to do so results in a violation of subsection 106.07(5) by the filing of an incorrect treasurer's report. There are such errors in this case.
The initial page of each treasurer's report is entitled Campaign Treasurer's Report Summary. It identifies the reporting period and sets forth the total contributions and expenditures for the period, as well as cumulative total for the campaign. This is the signature page for the campaign treasurer and the candidate.
On the Campaign Treasurer's Report Summary, there is a line item for "loans."[5] For the reporting period ending November 19, 1999, the entry in the Summary for "loans" from the candidate was $10,000. The schedule attached to the report failed to include any reference to any loans. In reality, the loan amount from the candidate was $15,000. Thus, the November 19 report was incorrect.
For the reporting period ended December 9, 1999, the entry for "loans" in the Summary and in the schedule was $10,000, but the actual loan total was $82,000. Thus, the December 9 report was incorrect.
In finding violations as to these two treasurer's reports, the administrative law judge found that "the campaign treasurer was unaware of loans made by Respondent to the campaign prior to reconciling bank records." R. 359. Since "loans" was a line item on the signature page of the two cited reports, and the loan amounts were amounts that the candidate had contributed personally to the campaign, it may be reasonably concluded that the candidate in the press of the campaign simply failed to read the reports before signing them. The failure to read a required document before signing would be reckless and would meet the required legal standard. Accordingly, *922 we affirm the finding of two violations of subsection 106.07(5) as to the two campaign treasurer's reports for the periods ended November 19, 1999 and December 9, 1999.

VI.
Closely related to the foregoing, but giving rise to separate charges, the Commission charged the candidate with failing to report 287 contributions on the schedules attached to the treasurer's reports. The failure to so report is a violation of paragraph 106.19(1)(b), Florida Statutes.
These charges relate to contributions that went into the campaign depository without the treasurer making any proper record of them. The campaign treasurer prepared the treasurer's report without including an itemized listing of these contributions in the schedules.
The administrative law judge and the Commission convicted the candidate of 287 violations. These convictions rested on the propositions discussed previously, namely, that the candidate had a duty to review the backup documentation for the report before signing it, and that the candidate had failed to supervise the campaign treasurer. For the reasons stated previously, we are unable to sustain that analysis.
We do, however, accept an alternative analysis on these charges with respect to the candidate loans. The loans should have been listed on the schedules of contributions attached to the reports for the periods ending November 19 and December 9. Since the candidate failed to list four loans this constitutes four violations of paragraph 106.19(1)(b).[6]

VII.
We urge the legislature to revisit the issue of the candidate's certification of campaign finance reports, with a view toward providing candidates more specific guidance.
Clearly it is important for the public to have accurate and timely disclosure of contributions and expenditures. It is of little help to the public if there is accurate reporting after the campaign is over.
It is equally important to the public for the candidates to have maximum ability to campaign during the campaign period. If the candidates are to conduct more than a facial review of the correctness of the campaign treasurer's reports, then a system needs to be devised which is workable given the time demands of a political campaign.

VIII.
The Commission charged the candidate with making a cash contribution to the campaign of $10,000. The Commission charged that this transaction violated the $100 limit of subsection 106.09(1), Florida Statutes (1999), and the $500 limit of paragraph 106.08(1)(a), Florida Statutes.
The administrative law judge rejected these two charges. The Commission concluded that the administrative law judge had been incorrect on the law and found *923 the candidate guilty of these two violations. We agree with the administrative law judge and reverse the Commission as to these two violations.
The parties' pretrial stipulation stated that "[a] $10,000 cash contribution was deposited into Respondent's campaign account on November 30, 1999." After hearing the evidence, the administrative law judge found that "[t]he $10,000 customer deposit/cash contribution deposited in the campaign account on November 30, 1999, was, in fact, a campaign loan from Respondent in the form of a transfer from Respondent's personal account." R. 361-62. The administrative law judge found that there was no violation of the prohibition on cash contributions in excess of $100 and, since this was a loan from the candidate, there was no violation of the contribution limits.
On review of the exceptions by the prosecution, the Commission reasoned that the pretrial stipulation amounted to an admission of an illegal $10,000 cash contribution. The Commission took the position that by its literal words, the stipulation admitted a violation of both statutes.
The Commission erred in overturning the analysis of the administrative law judge. The statutory definition of "contribution" includes a loan. See § 106.011(3)(a), Fla. Stat. (1999). The stipulation established that $10,000 went into the campaign account on November 30. To determine whether there had been an election law violation, it was still necessary for the administrative law judge to understand the underlying nature of the transaction, and if there was a violation, whether the violation was willful.
We agree with the administrative law judge's approach to the problem. A stipulation "should not be construed technically, but rather in accordance with its spirit, in furtherance of justice." 2A Fla. Jur.2d Agreed Case and Stipulations § 6, at 218 (1998) (footnotes omitted); Troup v. Bird, 53 So.2d 717, 721 (1951); Travelers Ins. Co. v. VES Service Co., 576 So.2d 1349, 1350 (Fla. 1st DCA 1991); Jones v. Turlington, 504 So.2d 811, 813 (Fla. 3d DCA 1987); Gentile v. Dept. of Prof'l. Regulation, 448 So.2d 1087, 1089-90 (Fla. 1st DCA 1984). Accordingly we reverse the finding of violations on these two claims.

IX.
The Commission charged, and the administrative law judge found, violations of subsection 106.11(3) and 106.19(1)(d), Florida Statutes (1999) which prohibits any candidate, campaign manager, or treasurer from authorizing any expenses or signing a check drawn on the primary campaign account, unless there are sufficient funds on deposit. The treasurer testified that he believed there were sufficient funds in the campaign account to pay all campaign expenses as they became due. All checks cleared when redeposited.
Keeping track of the funds in the campaign account is clearly the responsibility of the treasurer. There is no showing that the candidate had anything to do with the writing of the checks. We see no basis on which to find a willful violation on the part of the candidate. Accordingly we reverse the finding of violations of the cited statutes.

X.
The Commission charged that the campaign ran five advertisements without the required disclaimer that they were paid political advertisements and without identifying the sponsor, in violation of subsection 106.143(1), Florida Statutes (1999). The Commission charged that five additional advertisements were run without stating the candidate's political affiliation, *924 in violation of subsection 106.143(2), Florida Statutes (1999). The Commission further charged that one political advertisement failed to state that it had been approved by the candidate and the identity of the person who paid for the advertisement, in violation of paragraph 106.143(4)(a), Florida Statutes (1999).
The testimony was that the campaign relied on an inexperienced volunteer to prepare the advertising. She assumed that the printer would insert all of the required disclaimers and candidate statements, but that did not happen. The candidate himself did not review the advertisements.
Because paragraph 106.143(4)(a) requires that political advertisements be approved in advance by the candidate, we uphold the finding of the administrative law judge. If the candidate had reviewed the advertisements as required, the deficiencies would have been apparent. The evidence is therefore legally sufficient on these claims.

XI.
We next consider the Campaign's argument that the number of counts must be further reduced because of the way that the Commission pled its case. We reject this argument on the facts presented here.
Section 106.265, Florida Statutes authorizes the Commission to impose civil penalties for violations of chapter 106 "in the form of fines not to exceed $1,000 per count." § 106.265(1), Fla. Stat. (1999) (emphasis added).
The term "count" has a generally understood meaning. It means "[i]n a complaint or similar pleading, the statement of a distinct claim." Black's Law Dictionary 353 (7th ed.1999).
In McGann v. Florida Elections Comm'n, 803 So.2d 763, 766 (Fla. 1st DCA 2001), the court ruled that the Commission must use a separately numbered paragraph for each violation on which the Commission seeks to impose a fine. We agree with McGann.
The Commission correctly points out, however, that this procedural argument was not made until after the hearing before the administrative law judge had concluded. This is not surprising because the administrative law judge entered his findings several months before McGann was announced.
If the issue had been raised at the outset of proceedings before the administrative law judge, clearly the matter could have been corrected by allowing the Commission to replead its counts in proper form. Since there is no indication that the Campaign was misled or otherwise prejudiced, we decline to grant relief on this theory.

XII.
We conclude that there must be a new hearing on the issue of penalty in light of the reduction of the number of violations and the views we have expressed regarding chapter 106. In addition, a new hearing on penalty is required because one of the commissioners who considered this case should have recused herself upon the motion filed by counsel for Senator Diaz de la Portilla. The motion asserted that Commissioner Byrd was a lobbyist in the 2001 legislative session and as such, opposed certain legislation which had been sponsored by the Senator.
It would be our view that one who lobbies the Legislature should not participate, over objection, in the decision of a complaint against a member of the Legislature.[7] *925 We conclude that the Commissioner should have recused herself and should not participate in proceedings on remand.
Regarding the setting of fines, section 106.265, Florida Statutes, lists several factors to be considered. Among the things to be taken into account is "[t]he appropriateness of such penalty to the financial resources of the person ...." § 106.265(1)(c), Fla. Stat. The parties disagree on whose burden it is to introduce evidence into the record regarding the financial position of the accused.
We agree with the Commission that, in general, a party asserting the affirmative of a proposition has the burden of producing evidence on that proposition. See Young v. Dept. of Comty. Affairs, 625 So.2d 831, 833-34 (Fla.1993); Rinaldi v. Aaron, 314 So.2d 762, 764 (Fla.1975). Thus, if a defending party wishes his or her financial position to be taken into account as a matter in mitigation, that party should produce evidence of his or her financial resources. Where the defending party was the candidate for election, it may be most efficient to admit into evidence the most recent financial disclosure statement of the candidate. Since there must be further proceedings on the penalty issue, the Senator may introduce evidence of his financial position on remand.

XIII.
For the stated reasons, we affirm the order of the Commission in part, reverse it in part, and remand for a new hearing on the issue of penalty.[8]
NOTES
[1] The fact that the violation must be willful is not explicitly stated in subsection 106.265(1), but derives from subsection 106.25(3).

For certain violations the Commission may assess a "civil penalty equal to three times the amount involved in the illegal act." Id. § 106.19(2).
[2] Section 106.37, Florida Statutes, states:

106.37 Willful Violations.A person willfully violates a provision of this chapter if the person commits an act while knowing that, or showing reckless disregard for whether, the act is prohibited under this chapter, or does not commit an act while knowing that, or showing reckless disregard for whether, the act is required under this chapter. A person knows that an act is prohibited or required if the person is aware of the provision of this chapter which prohibits or requires the act, understands the meaning of that provision, and performs the act that is prohibited or fails to perform the act that is required. A person shows reckless disregard for whether an act is prohibited or required under this chapter if the person wholly disregards the law without making any reasonable effort to determine whether the act would constitute a violation of this chapter.
106.37, Fla. Stat. (1999) (emphasis added).
In its brief here, the Elections Commission has relied in part on pre-1997 administrative decisions interpreting the term "willful violation." See Division of Elections v. Tanner, No. D0SFEC 95-130 (August 29, 1995); Division of Elections v. Inman-Crews, No. DOSFEC 95-155 (December 4, 1995); and Division of Elections v. Miller, No. DOSFEC 95-131 (September 22, 1995). For the definition of "willful violations," section 106.37 now defines the term and is controlling on the subject. The earlier administrative definitions of "willful violation" would appear to have little, if any, continuing validity.
[3] We agree with the analysis of the administrative law judge, who stated:

The Commission suggests that the importance of protecting the integrity of the election process, as opposed to merely punishing wrongdoers, makes the Campaign Financing Law "remedial" in nature, and suggests a lesser "preponderance of evidence" standard. Of equal importance is the right of citizens to seek public office; the ruinous effect a determination that the candidate has violated the Campaign Financing Law has on an individual's reputation for personal integrity, and the potential of a fine (Commission suggests an appropriate fine in this case is $803,341.72) makes the Florida Campaign Financing Law essentially penal in nature and warrants a greater standard of proof, "clear and convincing evidence."
(Citations omitted).
While it is true that the parties had entered into a pretrial stipulation that the case would be governed by the preponderance of the evidence standard, that stipulation on a question of law was not binding on the administrative law judge and he was free to disregard it. See Alvarez v. Smith, 714 So.2d 652, 653 (Fla. 5th DCA 1998).
The administrative law judge applied the clear and convincing standard during the trial phase of the administrative proceeding.
[4] The administrative law judge also misapprehended the legal effect of the evidence in concluding that an examination of the campaign treasurer's backup information would have aided the candidate in this case. The entire problem was that the campaign treasurer failed to maintain complete and accurate records of the contributions and expenditures. Many contribution checks were deposited at the bank without maintaining records of what had been deposited, and checks were written without recording them. The active period of the campaign was only five weeks long and by the treasurer's testimony, bank statements and cancelled checks were not received in time to be of any use. The treasurer's reports reflected what was in the treasurer's (incomplete) records.

Comparing the treasurer's reports against the treasurer's records would be futile in a situation in which the records are incomplete.
[5] Under chapter 106, a contribution includes a loan to the campaign. § 106.011(3)(a), Fla. Stat. (1999). The details of the loan (date, lender, amount) are supposed to be included in the treasurer's report within the schedule of contributions.
[6] As previously explained, the treasurer's report for the period ending November 19, 1999, did not include any loans in the schedule of contributions attached to the report. This omission amounted to one violation of paragraph 106.19(1)(b).

The schedule of contributions attached to the December 9 treasurer's report included one loan of $10,000 on December 8. The December 9 schedule omitted three additional loans which were: $10,000 on November 30; $2,000 on December 8; and $60,000 on December 9. These three omissions from the December 9 schedule of contributions constitute three additional violations of paragraph 106.19(1)(b).
Thus we affirm a total of four violations of paragraph 106.19(1)(b).
[7] Effective in 2002, the Legislature has prohibited service on the Commission by anyone who is a lobbyist at the state or local government level. Ch.2002-281, § 3, Laws of Fla. (codified as § 106.24(1)(b), Fla. Stat. (2002)). However, this prohibition does not apply to anyone serving as a member of the Commission on July 1, 2002, until the expiration of his or her current term.
[8] In summary, we have affirmed the finding of seventeen violations: two violations of subsection 106.07(5) for the incorrect treasurer's reports; four violations of paragraph 106.19(1)(b) for the omitted loan amounts; five violations of subsection 106.143(1) for advertisements without disclaimers; five violations of subsection 106.132(2) for advertisements without indications of party affiliation; and one violation of paragraph 106.143(4)(a) for an advertisement without candidate approval.

We have reversed the remaining violations.