990 So.2d 473 (2008)
Larry LINER, etc., Appellant,
v.
WORKERS TEMPORARY STAFFING, INC., Appellee.
No. SC07-1470.
Supreme Court of Florida.
July 31, 2008.
*474 John G. Crabtree of The Florida Appellate Alliance, PLC, Key Biscayne, Florida, David J. George and Stuart A. Davidson, of Coughlin, Stoia, Geller, Rudman, and Robbins, LLP, Boca Raton, FL, Gregg I. Shavitz and Perry Tanksley of The Shavitz Labor Pool Law Firm, PLC, Boca Raton, FL, and Shannon McLin Carlyle of The Florida Appellate Alliance, PLC, The Villages, FL, for Appellant.
T. Todd Pittenger of Lowndes, Drosdick, Doster, Kantor, and Reed, P.A., Orlando, FL, and Thomas R. Tatum of Brinkley, Morgan, Solomon, Tatum, Stanley, Lunny, and Crosby, LLP, Fort Lauderdale, FL, for Appellee.
*475 PER CURIAM.
This case is before the Court on appeal from a decision of the Fourth District Court of Appeal, Liner v. Workers Temporary Staffing, Inc., 962 So.2d 344 (Fla. 4th DCA 2007), which declared a state statute invalid. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons expressed in our analysis, we reverse the Fourth District with regard to the constitutional issue but hold that Workers Temporary Staffing, Inc. ("WTS") is not liable to Larry Liner concerning its alleged violation of section 448.24(1)(b), Florida Statutes (2004).[1]

I. FACTS AND PROCEDURAL HISTORY
From approximately December 2002 to March 2004, Liner worked as a day laborer for a labor hall that was operated by WTS in Broward County, Florida. See Liner, 962 So.2d at 346. WTS charged day laborers a fixed, uniform price of $1.50 each way for transportation from this Broward County labor hall to any of the worksites it serviced in the Palm Beach, Broward, and Dade County area ("tri-county area"). See id.
On May 3, 2004, Liner filed an original class-action complaint against WTS, alleging that it had violated section 448.24(1)(b), Florida Statutes (2004), by overcharging Liner and other day laborers for transportation to various worksites from its Broward County labor hall and other workers for transportation from various labor halls located throughout the statei.e., the City of Tallahassee, Brevard County, Pasco County, Marion County, Manatee County, St. Johns County, and the City of Gainesville. Liner alleged that the class contained more than 500 day laborers and sought relief in the amount of $1000 per violation pursuant to section 448.25(1). On August 5, 2004, Liner filed a first amended class-action complaint in which he limited the claim to the labor halls that WTS operated in Broward, Brevard, Marion, and Volusia Counties.
On January 31, 2005, the trial court held a case-management conference with regard to whether class discovery should proceed before class certification. The trial court ruled that Liner was required to make a preliminary showing during an evidentiary hearing that a valid cause of action existed under the Act before the court would proceed to class-related matters. On February 2, 2005, WTS filed a counterclaim for declaratory relief. Specifically, WTS sought a judicial declaration that (1) it had complied with the Act;[2] (2) section 448.24(1)(b) is unconstitutionally vague; and (3) the statutory-damages provision of section 448.25(1) is unconstitutionally excessive. WTS also asserted that its transportation service was more similar to a "demand-responsive carrier," which would deliver day laborers directly to a designated worksite, than a bus system that followed fixed routes.
On June 1, 2005, Liner filed a second amended class-action complaint. In this complaint, Liner limited the claim to those day laborers overcharged by WTS for transportation from the Broward County labor hall to Broward County worksites. Liner asserted that WTS overcharged in violation of section 448.24(1)(b) because the cost of one-way bus travel on the Broward *476 County Transit system at that time was $1.00, while, in contrast, WTS charged $1.50 each way for its site-to-site transportation.
On November 14, 2005, the trial court pursuant to the earlier case-management ordercommenced an evidentiary hearing on Liner's individual claim and the declaratory-judgment counterclaim of WTS. See Liner, 962 So.2d at 346. The evidence revealed that (1) Liner was seeking $265.50 in actual damages and $177,000 in statutory damages; (2) on-time arrival at the worksites for job assignments was crucial; (3) for those job assignments that commenced prior to 5:30 a.m., there was no bus service to ensure on-time arrival; (4) Liner worked 234 job assignments for WTS in the tri-county area between December 2002 and March 2004; and (5) the average costmeasured by the least expensive form of public transportation[3] that would ensure on-time arrivalfor public transportation to a random sample of these job assignments was $32.00.[4]
After the evidence was presented, the parties stipulated that the trial court should consider the evidentiary hearing as a bench trial on the issue of WTS's liability to Liner under section 448.24(1)(b). Thus, the parties contemplated that any order of the trial court would constitute a judgment on liability only, not damages. The trial court subsequently ruled that (1) WTS had complied with the Act; (2) section 448.24(1)(b) is unconstitutionally vague; and (3) the statutory-damages provision of section 448.25(1) is unconstitutionally excessive.
On appeal, the Fourth District only affirmed the ruling of the trial court that section 448.24(1)(b), Florida Statutes (2004), violates the Due Process Clauses of both the United States and Florida Constitutions. See Liner, 962 So.2d at 346-48.[5] The district court reasoned that section 448.24(1)(b) is unconstitutionally vague. See id. On August 3, 2007, Liner filed a notice of appeal with this Court.

II. ANALYSIS

A. WTS's Liability to Liner Under the Act

i. Introduction
Liner asserts that WTS violated section 448.24(1)(b), Florida Statutes (2004), by overcharging him for transportation from the labor hall in Broward County to various worksites within that county. The trial court ruled that WTS is not liable to Liner under section 448.24(1)(b). We agree. We review the statutory interpretation conducted by the trial court to reach this ultimate ruling de novo, while we defer to those factual findings of the trial court that are supported by competent, substantial evidence from the record. See N. Fla. Women's Health & Counseling Servs., Inc. v. State, 866 So.2d 612, 626-27 (Fla.2003).
At the outset, we emphasize that our statutory analysis applies exclusively to the version of the Florida Labor Pool Act *477 that applied when WTS allegedly overcharged day laborers for transportation to and from its Broward County worksites between December 2002 and March 2004. At that time, section 448.24(1)(b) read:
(1) No labor pool shall charge a day laborer:
. . . .
(b) More than a reasonable amount to transport a worker to or from the designated worksite, but in no event shall the amount exceed the prevailing rate for public transportation in the geographic area ...
§ 448.24(1)(b), Fla. Stat. (2004). This version of section 448.24(1)(b) was in effect from 1995when the Act was enacted until 2006. See ch. 95-332, § 1, at 2932, Laws of Fla. In 2006, the Legislature amended section 448.24(1)(b) by making the following changes:
(1) No labor pool shall charge a day laborer:
. . . .
(b) More than a reasonable amount to transport a worker to or from the designated worksite, but in no event shall the amount exceed $1.50 each way the prevailing rate for public transportation in the geographic area....
Ch. 2006-10, § 1, at 198, Laws of Fla; § 448.24(1)(b), Fla. Stat. (2006).[6]

ii. Remedial or Penal in Nature
WTS asserts that the Labor Pool Act is penal in nature. In Florida, the general rule is that any ambiguity present in a civil statute of a penal nature is construed in favor of the party alleged to have violated the statute. See Diaz de la Portilla v. Fla. Elections Comm'n, 857 So.2d 913, 917 (Fla. 3d DCA 2003). Conversely, a remedial statute should be liberally construed to suppress the evil targeted by the Legislature and to fulfill the intended remedy. See Golf Channel v. Jenkins, 752 So.2d 561, 565-66 (Fla.2000). In opposition to WTS, Liner asserts that the Legislature intended for the Act to be remedial in nature:
The Legislature finds that this part is necessary to provide for the health, safety, and well-being of day laborers throughout the state and to establish uniform standards of conduct and practice for labor pools in the state, and this part shall be carried out in accordance with this purpose.
§ 448.21, Fla. Stat. (2004) (entitled "Legislative intent"). While the Act is designed to remedy a specific evil, we nevertheless conclude that section 448.24(1)(b) is a civil statute that is penal in nature because of the potentially extreme punitive damages provided by section 448.25(1). Therefore, we must construe any ambiguity present in the Act in favor of WTS.
The statutory language present in section 448.21 is not dispositive. Instead, the determinative factor is the nature of the provision for damages imposed for violations of the Act:
(1) Any worker aggrieved by a violation of s. 448.24 shall have the right to bring a civil action in a court of competent jurisdiction against the labor pool responsible for such violation. In any action commenced pursuant to this part, the worker shall be entitled to recover actual and consequential damages, or $1,000, whichever is greater, for each violation of this part, and costs.

§ 448.25(1), Fla. Stat. (2004) (entitled "Remedies; damages; costs") (emphasis *478 supplied). Due to the nature of a claim filed pursuant to section 448.24(1)(b), the actual damages suffered by a complainant will usually be significantly less than the statutory damages ($1000 per violation) afforded by section 448.25(1). Here, Liner claimed that WTS violated section 448.24(1)(b) when it overcharged him 50 cents for each instance of transportation to a Broward County worksite on 177 separate occasions, which produced only $265.50 in actual damages. However, those 177 separate transportation overcharges would produce $177,000 in statutory damages. The amount of actual damages claimed by Liner is minimal when compared to the amount he has claimed in statutory damages. It must also be remembered that the $1.50 fee that WTS charged for transportation to its Broward County worksites is very similar in amount to the cost of other inexpensive forms of bus-system transportation. As reflected in the plain language of section 448.25(1), the Legislature contemplated that the statutory-damages provision of $1000 per violation would virtually always yield an amount that would significantly exceed any actual damages produced by a violation of section 448.24(1)(b). Thus, section 448.24(1)(b), interpreted in light of section 448.25(1), is a civil statute of a penal nature.
Additionally, our prior interpretation of another civil statute supports this conclusion. In State Farm Mutual Automobile Insurance Co. v. Laforet, 658 So.2d 55 (Fla.1995), we held that section 627.727(10), Florida Statutes (Supp.1992), was penal in nature notwithstanding the Legislature's implementing language, which stated that the purpose of the legislation was to "reaffirm existing legislative intent, and as such is remedial." Id. at 60 (emphasis supplied). This Court reasoned that section 627.727(10) was penal in nature because this statute provided the insured with an additional $200,000 in statutory damages that were not previously available in a first-party bad-faith action. See id. at 61. Section 627.727(10) enabled a first-party insured to collect excess damages caused by an insurer's bad faith even though that bad faith only injured the third-party victim. See id. at 60.
Similar to section 627.727(10), section 448.24(1)(b) enables the aggrieved party to collect a significantly greater amount of damages than the actual damages inflicted upon that party. We conclude that, in providing protection for the "health, safety, and well-being of day laborers,"[7] the Legislature utilized the $1000-per-violation statutory-damages provision to deter labor pool companies from exploitingalbeit through a transportation charge that may only slightly exceed the cost of other inexpensive forms of mass transportationthe day laborers that they employ. Thus, section 448.24(1)(b), interpreted in pari materia with section 448.25(1), is penal in nature, and any ambiguities must be construed in favor of WTS. See Diaz de la Portilla, 857 So.2d at 917 n. 3 (holding that section 106.37 of the Campaign Financing Lawa violation of which can result in a maximum fine of $1000 per count and would necessarily have a "ruinous effect" on the candidate's reputationis a civil statute of a penal nature).

iii. General Framework for Section 448.24(1)(b)
Liner asserts that section 448.24(1)(b) has both a subjective standardi.e., the first clause which states that a labor hall shall not charge "[m]ore than a reasonable amount to transport a worker to or from the designated worksite"and a separate objective standard *479 i.e., the second clause which states "but in no event shall the amount exceed the prevailing rate for public transportation in the geographic area." We disagree. Instead, we conclude that the Legislature intended for section 448.24(1)(b) to constitute a single standard for evaluating the transportation fee charged by a labor hall owner.
The plain language of the legislation supports an interpretation that the term "reasonable amount" is the centerpiece of section 448.24(1)(b). The other language contained within this statute is designed to provide meaning and a parameter for this term. Specifically, the phrase "to or from the designated worksite," which follows the term "reasonable amount," in the first clause of section 448.24(1)(b), is intended to modify this term. Logically, the transportation charge of a labor hall owner should only be evaluated against the cost of site-to-site public transportation between the designated worksite and the labor hall. Additionally, the second clause i.e., "but in no event shall the amount exceed the prevailing rate for public transportation in the geographic area"was included to provide further meaning or a ceiling on that which may constitute a "reasonable amount." Finally, we conclude that the plain language of section 448.24(1)(b) establishes that the Legislature intended for the highly specific phrase "to or from the designated worksite," which is contained within the first clause, to modify the entire second clause, which includes the more general term "geographic area." See Eicoff v. Denson, 896 So.2d 795, 798 (Fla. 5th DCA 2005) ("[W]here an enumeration of specific things is followed by some more general word, the general word will usually be construed to refer to things of the same kind or species as those specifically enumerated." (quoting Jacobo v. Bd. of Trustees of Miami Police, 788 So.2d 362, 364 (Fla. 3d DCA 2001))).
The legislative history of section 448.24(1)(b) also supports this interpretation. In 1995, the Legislature initially attempted to enact a provision (with regard to the transportation fee that day laborers could be charged) that consisted of a single clause, made no mention of "reasonable amount," and capped the permissible transportation charge at $1.00.[8] However, the Legislature ultimately enacted section 448.24(1)(b), which included two clauses that surround the central concept and term "reasonable amount." This history demonstrates that the Legislature intended to provide greater flexibility for transportation charges that could be assessed, while maintaining the framework of a single standard of reasonableness. Tellingly, a staff analysis summarized the effect of the proposed language, which was ultimately enacted in identical form as section 448.24(1)(b):

s. 448.24, F.S. (Duties and rights): Prohibits a labor pool from charging laborers... more than a reasonable amount, not to exceed the local prevailing rate for public transportation, for transporting the worker to or from the worksite....
Fla. H.R. Comm. on Commerce, CS/HB 595 (1995) Staff Analysis 3 (Apr. 19, 1995) (on file with the Florida State Archives) (emphasis supplied). This illustrates that the Legislature understood that the phrase "to or from the designated worksite," *480 which appears in the first clause of section 448.24(1)(b), modifies the additional language contained in both the first and second clauses. In sum, the relevant legislative history further supports our conclusion that section 448.24(1)(b) contains a single standard centered upon the concept and term "reasonable amount."

iv. The Framework as Applied to These Circumstances
The circumstances in each case must be applied within this general framework to determine the context-specific meaning of the various words included within this version of section 448.24(1)(b). Again, the Legislature could have utilized a fixed rate but, instead, chose to provide flexibility for that which constitutes a "reasonable amount" under discrete circumstances. Here, we conclude that the trial court's interpretation of the terms "public transportation" and "geographic area" was reasonable under these circumstances.
In ruling that WTS was not liable to Liner under section 448.24(1)(b), the trial court made the following findings with regard to the meaning of "public transportation" and "geographic area":
1. "Public transportation" is not limited to bus travel.... 3. "Geographic area" in this case means the tri[-]county area since that is the area serviced by WTS and the area within which Mr. Liner worked.
On the facts of this case, we conclude that the trial court's interpretation of "geographic area" to refer to the tri-county area is supported by competent, substantial evidence from the record. During the evidentiary hearing, reasonable testimony established that transportation for this tri-county area is not planned exclusively on a county-by-county basis but, instead, is predicated upon a tri-county basis published by the South Florida Regional Transportation Authority. The record establishes that the rates for intra-county travel in South Florida vary between Dade, Broward, and Palm Beach Counties. For example, the bus fare for travel within Broward County between December 2002 and March 2004 was $1.00 per ride, whereas the bus fare within Palm Beach County during the same time period was $1.25 per ride.[9]
Regardless, the trial court correctly deduced that, even if the "geographic area" consisted solely of Broward County, this determination would not have altered its ultimate ruling that WTS is not liable to Liner under the Act. The trial court reasoned:
In order for Mr. Liner to prevail on his claim based on these facts "public transportation" must mean travel exclusively by bus. Any other form of public transportation would be more expensive than that charged by WTS. Even the bus in combination with any other form of public transportation would be more expensive than that charged by WTS.
The concept of "public transportation" simply cannot be limited to bus travel in this area, and under the circumstances of the instant case, Liner cannot prevail. The Legislature intended for the phrase "to or from the designated worksite" to modify the entire second clause of section 448.24(1)(b). Thus, in the context of any particular case, "public transportation" cannot be limited to a form of *481 transportation that does not provide site-to-site service to the relevant worksites. This conclusion is supported by the statutory definitions that the Legislature has provided for this same term in other legislation: "Public transportation" is not limited to bus service but, instead, also includes "motor vehicle[s]"[10] and "other means of conveyance operating as a common carrier." §§ 163.566(8), 343.62(5), Fla. Stat. (2004). Additionally, in a separate statute, the Legislature defined "public transit" as including both governmentally owned and privately owned transportation systems and also "paratransit," which is defined as taxis, "dial-a-ride" buses, and other means of conveyance that provide service between "specific origins" and are "characterized by their nonscheduled, nonfixed route nature." § 341.031(5)-(6), Fla. Stat. (2004) (emphasis supplied). We conclude that the Legislature similarly intended for the term "public transportation"as enacted within the context of section 448.24(1)to have a broad, general meaning to allow for flexible application under different, specific factual circumstances involving different, specific locations.
Here, the record establishes that bus service in Broward County did not provide site-to-site service to the Broward County WTS worksites. During the evidentiary hearing, competent, substantial evidence established that distances remained between the nearest arrival bus stops and any of the Broward County worksites included within the sample. These additional distances did not exist when the day laborers used the site-to-site van service of WTS. Thus, the cost associated with the distance from the nearest arrival bus stop to the worksite (and vice versa at the end of the workday) must be taken into account to determine whether WTS's transportation charge of $1.50which encompassed site-to-site transportation to or from the designated worksiteconstituted a "reasonable amount." The evidence established that the least expensive form of site-to-site public transportation that could service these additional distances under such circumstances would be taxi service. Further, the record establishes that (1) the taxi companies of Broward County could provide service from these arrival bus stops to the worksites; (2) the rates for taxi service in Broward County are established by the Broward County Board of County Commissioners; and (3) the rate for the first one-eighth of a mile (or any lesser distance) is $1.50. When this cost of taxi service from the arrival bus stop to the designated worksite (i.e., $1.50) is added to the cost of bus travel from the labor hall in Broward County to the arrival bus stop (i.e., $1.00), it becomes apparent that WTS's transportation charge of $1.50 did not exceed the cost of public transportation to the designated worksite.[11] Consequently, the term "public transportation" cannot be limited exclusively to the cost of bus travel under the circumstances of the instant case, and for that reason alone, WTS is not liable to Liner under section 448.24(1)(b).

*482 B. Constitutionality of the Act
WTS also asserts that both section 448.24(1)(b) and section 448.25(1), Florida Statutes (2004), violate the Due Process Clauses of the United States and Florida Constitutions. We do not address these claims. In Florida, it is well established that this Court should refrain from deciding constitutional questions when the case may be resolved on other grounds. See Sullivan v. Sapp, 866 So.2d 28, 34 (Fla.2004). Further, this rule of last resort has been invoked by this Court in cases where jurisdiction was similarly based upon the constitutionality of a statute. See Harbor Ventures, Inc. v. Hutches, 366 So.2d 1173, 1173 (Fla. 1979) (declining to decide the constitutional claim because proper interpretation of the statute obviated such a decision; jurisdiction was based upon the trial court's ruling that the statute was constitutional); De Jong v. Pallotto, 239 So.2d 252, 253 (Fla.1970) (substantially similar); P.C. Lissenden Co. v. Bd. of County Comm'rs, 116 So.2d 632, 633-36 (Fla.1959) (substantially similar). Thus, we do not address the constitutionality of either section 448.24(1)(b) or section 448.25(1) because, as previously discussed, the trial court properly applied the statute and determined that WTS is not liable to Liner under the Act.

III. CONCLUSION
For the foregoing reasons, we disapprove the reasoning and analysis of the Fourth District in Liner v. Workers Temporary Staffing, Inc., 962 So.2d 344 (Fla. 4th DCA 2007), with regard to the alleged unconstitutionality of section 448.24(1)(b), Florida Statutes (2004), and therefore reverse that decision. We approve the trial court's ruling that Liner has no claim of liability against WTS under section 448.24(1)(b) and remand to the Fourth District with directions to affirm the judgment of the trial court with regard to the non-liability of WTS.
It is so ordered.
QUINCE, C.J., and WELLS, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
CANTERO and BELL, JJ., concur in result only.
NOTES
[1] This case involves our interpretation of the Florida Labor Pool Act ("the Act") as it existed during the years 2002-2004. For ease of presentation, we have cited the 2004 versions of the relevant statutes; however, our analysis pertains equally to the 2002 and 2003 versions.
[2] At the relevant time, the Act consisted of sections 448.20-.25, Florida Statutes (2004).
[3] Limousine service was not considered.
[4] Timely arrival at some of the designated worksites would have required the use of more expensive modes of transportation that do not follow fixed routes (taxicab service being the primary example). These more expensive fares thus increased the above-listed average cost.
[5] The Fourth District did not affirm the ruling of the trial court that section 448.25(1) is unconstitutional. See Liner, 962 So.2d at 346 n. 2 ("The circuit court also held that section 448.25 is unconstitutional. We do not agree that the section is unconstitutionally vague."). We do not address the constitutionality of section 448.25(1) because this question is unnecessary to our resolution of this case.
[6] Amended statutory language appears in underlined text; deleted statutory language appears in strike-through text.
[7] § 448.21, Fla. Stat. (2004).
[8] The staff analysis prepared on March 10, 1995, stated:

s. 448.24, F.S. (Duties and rights): Prohibits a labor pool from charging laborers ... more than a $1 [fee] for transporting the worker to or from the worksite....
Fla. H.R. Comm. on Commerce, HB 595 (1995) Staff Analysis 3 (Mar. 10, 1995) (on file with the Florida State Archives) (emphasis supplied).
[9] Liner asserts that "geographic area" can only mean Broward County because, in his second amended class-action complaint, he limited the claim to violations that allegedly occurred in Broward County. We disagree. The "geographic area" is based upon the public-transportation system in place for a particular area and is not controlled by the manner in which a party pleads a claim.
[10] We note that the Legislature's use of the term "motor vehicle[s]" means taxi service, which is considered "[p]ublic transportation" under sections 163.566(8) and 343.62(5), Florida Statutes (2004).
[11] We also note that there were additional distancesi.e., from the labor hall in Broward County to the nearest departure bus stopsthat bus travel did not service but which were serviced by the WTS transportation program. However, we choose not to measure the additional cost of taxi service between these distances because the cost of taxi service between the arrival bus stops and the worksites alone established that WTS did not violate section 448.24(1)(b).